654 S.E.2d 115

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Kenneth Ray COLLINS, Defendant
Below, Appellant.

No. 33300.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 9, 2007.

Decided Oct. 30, 2007.

Mark Hobbs, Hobbs & Harwood, Attorneys at Law Chapmanville, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM:

This action is before this Court upon the appeal of Kenneth Ray Collins [hereinafter "Appellant"] from a December 30, 2005, Order Denying Motion for Reconsideration entered by the Circuit Court of Mingo County. The Appellant's Motion for Reconsideration followed a sentencing order entered on February 16, 2005, as the result of a jury verdict rendered on January 12, 2005, convicting the Appellant of one count of sexual abuse in the third degree, in violation of West Virginia Code § 61–8B–9, and one count of sexual abuse by a parent, guardian or custodian, in violation of West Virginia Code § 61–8D–5.[1]

The Appellant moved for reconsideration of a sentence of not less than ten years nor more than twenty years in the state penitentiary. The Appellant contends that the circuit court committed error by not directing a verdict of acquittal on the charge of sexual abuse by a custodian at the close of the state's case in chief, and in submitting to the jury any instructions on that charge. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Upon the applicable *de novo* standard of review and for the reasons expressed below, the December 30, 2005, order of the Circuit Court of Mingo County is affirmed.

## I.

### Factual and Procedural History

In August 2002, Tina Pennington, a resident of Mingo County, reported her minor daughter, Samantha O.,[2] missing.[3] Samantha was thirteen years old at the time of her mother's report. Corporal Mark Muncy with the West Virginia State Police conducted an investigation, and during the course of events, Ms. Pennington told Corporal Muncy that Samantha had made allegations of past sexual assaults against her. Ms. Pennington was advised to take the minor to Child Protective Services and report the matter to Rhonda Pack. Ms. Pack later informed Corporal Muncy that the Appellant was the suspect in these allegations of sexual assault, and a videotaped statement of Samantha that was taken by Child Protective Services was provided to him. Corporal Muncy reviewed the videotaped statement and interviewed Samantha via telephone.

On August 6, 2002, Corporal Muncy asked the Appellant to come in for questioning and the Appellant complied. Upon his arrival at the State Police office, Appellant was read

---

1. The Appellant was charged under the 1998 version of the statute, which was later amended in 2005. The 2005 amendments to the statute are not directly relevant to the issue on appeal before this court.

2. Following our traditional practice in cases involving children and sensitive facts, we do not use the last name of the victim. *See State v. Roy,* 194 W.Va. 276, 460 S.E.2d 277 (1995).

3. The Federal Bureau of Investigations (FBI) was contacted in this matter, but it was determined that Samantha's mother, who was addicted to drugs at the time, made a false report. Samantha eventually returned home. She had been given permission to travel to Hickory, North Carolina with some family friends, but they did not return home on time because their car had broken down.

his Miranda rights and was informed that he could leave at any time. While interviewing the Appellant, Corporal Muncy wrote a statement based on what the Appellant told him.[4] After Corporal Muncy read the statement back to the Appellant, the Appellant signed it while Sergeant J.J. Lester witnessed it.[5] Based on the videotape provided by Child Protective Services and the Appellant's statement, Corporal Muncy obtained a warrant for the Appellant's arrest, and the Appellant was served with it. On September 23, 2004, the Mingo County Grand Jury returned a four count indictment against Appellant. The indictment included one count of sexual assault in the first degree, one count of sexual assault in the second degree, and two counts of sexual abuse by a parent, guardian or custodian.

At the trial on January 12, 2005, Samantha testified that she knew the Appellant as she was growing up, and that he used to date her aunt.[6] She stated that around August 2000, she was living at Appellant's parents' house in Taylorville, West Virginia, because her mother had no place to live. Although the Appellant did not live there, he frequently came over to his parents' house to visit. On numerous occasions, Appellant took Samantha away from the house to go riding on his four-wheeler. Samantha testified that she was under the Appellant's supervision during these times. On one of the trips, Appellant took Samantha, then eleven years old, into some hills near his parents' house. There, he stopped the four-wheeler and told Samantha to give him oral sex. Because the Appellant had stated "we will stay [here] until you do it," Samantha complied with the Appellant's instruction. Afterward, she testified

that she cried and asked to go home. Samantha also testified that approximately one year later, in 2001, when she was twelve years old, the Appellant sexually assaulted her again when she spent the night at his apartment with Appellant and his wife, Melissa.[7] Samantha stated that she was going to take a bath and went into the bedroom to get a shirt, when Appellant came into the room and forced sexual intercourse on her. She testified that afterwards, Appellant became angry and told her not to tell anyone.

At the close of the State's case-in-chief, the Appellant moved for a judgment of acquittal, which the circuit court denied. During the Appellant's case-in-chief, the Appellant denied that he had ever taken Samantha four-wheeler riding and further denied any sexual misconduct with her. Despite this, the jury returned guilty verdicts regarding the four-wheeler incident on the charge of sexual abuse by a parent, guardian or custodian and the charge of third degree sexual abuse. The Appellant was found not guilty of the charges related to the alleged 2001 incident at his apartment contained in Counts III and IV of the indictment.

A sentencing hearing was held on February 14, 2005, wherein the Appellant was sentenced to an indefinite term of not less than ten (10) years nor more than twenty (20) years on the charge of sexual abuse by a parent, guardian or custodian. Appellant was also sentenced to a period of ninety (90) days on the charge of sexual abuse in the third degree. The Appellant filed a Motion for Reconsideration the next day, on February 15, 2005, and subsequently filed a Notice of Appeal on February 23, 2005.[8] After a

---

4. Corporal Muncy wrote the Appellant's statement on his behalf because he could not read and write well, other than signing his own name. The Appellant's signed statement recounts the events alleged by Samantha, but states that Samantha instigated the sexual contact, not the Appellant.

5. Sergeant Lester signed the statement indicating that he witnessed the Appellant signing the statement in his presence.

6. Although the sexual abuse occurred when Samantha was eleven and twelve years old, Samantha was sixteen at the time she testified at trial.

7. Samantha referred to Melissa as Appellant's wife at trial. However, based upon other testimony, it appears that Melissa may have been Appellant's ex-wife and girlfriend at the time. Samantha testified that she thought of Melissa as an aunt, and felt safe with her there. However, at the time of this second alleged incident, Melissa had left the house to visit the neighbors.

8. Appellant's prior counsel, Ernest Skaggs, moved to withdraw as counsel on June 8, 2005. An Order of Substitution of Counsel was entered on October 18, 2005, substituting Mark Hobbs as counsel for the Appellant.

hearing on the Appellant's Motion for Reconsideration on November 21, 2005, the circuit court entered an Order Denying Motion for Reconsideration on December 30, 2005. It is from that order that Appellant now appeals.

## II.

## Standard of Review

■ This appeal raises the issue of whether the circuit court erred in denying the Appellant's motion for a directed verdict of acquittal on the charge of sexual abuse by a custodian under West Virginia Code § 61–8D–5, and in submitting instructions on that charge to the jury. The Appellant does not seek appeal of his conviction of third degree sexual abuse. "Where the issue on appeal is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With that standard of review in mind, we now turn to the issue before us.

## III.

## Discussion

■ The Appellant presents one assignment of error, contending that the circuit court erred when it failed to direct a verdict of acquittal on the charge of sexual abuse by a custodian at the close of the State's case-in-chief, and erred in submitting instructions to the jury on that charge. The State maintains that the circuit court did not commit error because the relationship of the Appellant with the victim was sufficient for a jury to find the Appellant to be a custodian for purposes of West Virginia Code § 61–8D–5 (1998) (prior to its amendment by the State Legislature in 2005.) We affirm the ruling of the circuit court, finding that the State presented sufficient evidence by which a jury could conclude that the Appellant was a custodian of Samantha at the time the sexual assault occurred in 2000.

9. In 2005, the Legislature amended West Virginia Code § 61–8D–5(a) to add the phrase, "or

Before the statute was amended in 2005, West Virginia Code § 61–8D–5(a) (1998) stated:

In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

West Virginia Code § 61–8D–6–1(4) (1998) defined a "custodian", for the purposes of West Virginia Code § 61–8D–5 as:

... a person over the age of fourteen years **who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding.** "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

(Emphasis added).[9]

The Appellant contends that his relationship with Samantha did not constitute that of

person in a position of trust to a child." The

a custodian under the statutory language existing in West Virginia Code § 61–8D–5 prior to the Legislature's 2005 amendment. Rather, the Appellant characterizes his relationship with the minor merely as "someone taking an alleged victim on a four-wheeler ride."[10] Though the Appellant now seeks to minimize his ongoing relationship to Samantha, this characterization, when the record is reviewed in its entirety, fails to fairly and accurately represent the custodial relationship the Appellant had with the minor victim. The record reveals a sufficient basis by which a jury could find that, at the time of his sexual misconduct, the Appellant was a custodian of Samantha.

During the trial in this matter, the jury was given instructions regarding sexual abuse by a custodian and the definition of "custodian" as follows:

> Sexual abuse by a custodian is committed when any parent, guardian or custodian of a child under his or her care, custody or control, engages in, or attempts to engage in, sexual contact with a child under his or her care, custody or control, nothwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have suffered no apparent physical injury or mental or

emotional injury as a result of such conduct.

Definition of custodian. "Custodian" means any person over the age of fourteen years who **has** or shares **actual physical possession** or care and custody of a child on a full-time **or temporary basis**, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding.

(Emphasis added).

We find that, in analyzing the statutory definition of "custodian", the statutory language in existence prior to the 2005 statutory amendment was sufficiently broad enough for a jury to determine that the Appellant's relationship with Samantha was custodial in nature. The word "custody" is defined as "[t]he care and control of a thing or person for inspection, preservation, or security." Black's Law Dictionary 412 (Bryan A. Garner et al. eds., 8th ed. 2007). Additionally, the term "temporary" is defined as "[l]asting for a time only; existing or continuing for a limited time (usu. short) time; transitory." Black's Law Dictionary 1504 (Bryan A. Garner et al. eds., 8th ed. 2007). Absent a statutory definition of the terms "custody" and "temporary", we will necessarily defer to these "common, ordinary, and accepted meanings of the terms in the connection in

---

amended statute currently reads, in pertinent part:

(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to the child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

W. Va.Code § 61–8D–5(a) (2005).

The definition of a "person in a position of trust in relation to a child" currently states:

(12) A "person in a position of trust in relation to a child" refers to any person who is acting in the place of a parent charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

W.Va.Code § 61–8D–1(12) (2005).

**10.** The Appellant also asks this Court to consider why the Legislature would add the term "or other person in a position of trust in relation to" a child if the Legislature was not attempting to extend the definition to include situations such as the facts of the Appellant's case. We disagree and believe that the statutory language in existence prior to the amendment was sufficiently broad to characterize Appellant's relationship with Samantha as a custodian in order for the jury to convict him of this charge.

which they are used." *See In re Clifford K.,* 217 W.Va. 625, 640, 619 S.E.2d 138, 153 (2005).

Here, a jury could properly conclude that the Appellant accepted temporary physical possession and custody of Samantha when he agreed to take her on the four-wheeler ride. Samantha testified that she had gone four-wheeler riding with the Appellant on many prior occasions, and that she was under his direct supervision during these times. In view of such an existing routine, with its implicit parental permission, the jury herein concluded that the Appellant was allowed to, and voluntarily agreed to, take Samantha under his temporary physical custody [11] when taking her on four-wheeler rides away from his parents' home where she resided. Thus, the Appellant voluntarily became a temporary custodian within the meaning of West Virginia Code § 61–8D–1(4) (1998).

■ This Court has previously deemed *persons in temporary physical control of children* as "custodians" under West Virginia Code § 61–8D–5. In *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999), this Court, as a matter of first impression, visited the issue of whether a babysitter left in charge of three small children for a half-hour time period was deemed to be a "custodian" under the provisions of West Virginia Code § 61–8D–5. Therein, in syllabus point 1, we held that "[a] babysitter may be a custodian under the provisions of W. Va.Code, 61–8D–5 [1998], and whether a babysitter is in fact a custodian is a question for the jury." *Id.*

In the case *sub judice,* the jury heard ample evidence by which it could properly conclude that Appellant controlled and super-vised the eleven year old girl on numerous, albeit temporary, occasions where he would take her away from her home to go riding on his four-wheeler. Although the Appellant was not given the express title of "babysitter", we find that the jury could properly conclude that the circumstances established that he did in fact have the same amount of control and supervision as that of a babysitter. Accordingly, we believe the particular facts of this case present a set of circumstances contemplated by West Virginia Code § 61–8D–5, in effect at the time of the sexual abuse herein, and thus, we find that the jury properly convicted the Appellant of the charge of sexual abuse by a custodian.

## IV.

### Conclusion

For the foregoing reasons, the Circuit Court of Mingo County did not err in denying the Appellant's motion to direct a verdict of acquittal on the charge of sexual abuse by a custodian at the close of the State's case-in-chief; nor did the Circuit Court of Mingo County err in submitting to the jury any instructions on that charge. Accordingly, the December 30, 2005, order of the Circuit Court of Mingo County is affirmed.

Affirmed.

---

11. Additionally, as a custodian, the Appellant possessed sufficient control over Samantha on the date of the 2000 incident for a jury to properly convict him of the charge of sexual abuse by a custodian, under West Virginia Code § 61–8D–5. Specifically, the element of control was undeniably established by the fact that the Appellant refused to go home until Samantha performed oral sex on him.