703 S.E.2d 307

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Donald Lee LONGERBEAM, Defendant Below, Appellant.**

**No. 35472.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 12, 2010.

Decided Nov. 18, 2010.

Dissenting Opinion of Justice Benjamin Nov. 19, 2010.

Dissenting Opinion of Justice Workman Nov. 22, 2010.

**536**

John P. Adams, Joel Weinstein, Public Defender Corporation, Martinsburg, West Virginia, for the Appellant.

Brandon C.H. Sims, Stephanie F. Grove, Prosecuting Attorney's Office, Charles Town, West Virginia, for the Appellee.

PER CURIAM:

Appellant Donald L. Longerbeam seeks a reversal of his conviction on one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust with regard to a child.[1] As grounds for the reversal, Appellant maintains that he does not meet the definition of any of the specified classes of individuals that West Virginia Code § 61–8D–5(a) (2005) is directed at and he further argues that the alleged victim was

---

1. *See* W.Va.Code § 61–8D–5(a) (2005).

not under his care, custody, or control at the time of the alleged sexual conduct. Upon our careful review of these arguments in conjunction with the record in this case, we conclude that the trial court committed error by denying Appellant's post-trial motion for a judgment of acquittal. Accordingly, the decision of the trial court is reversed.

## I. Factual and Procedural Background

On June 8, 2007, Appellant and his wife, Cindy Longerbeam, were shopping at Wal-Mart when Mrs. Longerbeam received a cellular telephone call from the youngest of her sister's three daughters, Taylor G.,[2] asking for help to catch a loose hamster.[3] By the time Appellant and his wife arrived at Mrs. Longerbeam's sister's residence it was mid-morning and the hamster had already been secured. This fact was determined when Mrs. Longerbeam yelled upstairs upon her arrival. Mrs. Longerbeam asked her nieces Taylor G. and Marissa G. to come downstairs. After a short while, Mrs. Longerbeam went upstairs with Taylor G. apparently to check on the hamster. When Mrs. Longerbeam left the first floor living room area, Appellant was seated somewhere between the middle and the right side of the couch and the twelve-year-old victim, Marissa G., was seated on the left side of the couch. During the time when they were the only two people in the living area, Marissa G. testified that Appellant moved closer to her on the couch, put his arm around her shoulders, and touched her breast through her clothing.[4]

Soon after the alleged touching occurred, Kassandra M. or "Kacy," the sixteen-year-old sister of Taylor G. and Marissa G., came into the living area and encountered the situation. There was testimony that Appellant quickly moved away from Marissa G. and/or that his leg twitched[5] upon Kacy's entry into the living room.[6] Kacy headed up the stairs to the second floor and Marissa G. followed her. When both Kacy and Marissa were on the second floor, Marissa G. informed her older sister in response to Kacy's questioning, that Appellant "ha[d] been touching her." Kacy then went downstairs in search of her aunt and uncle and found Mrs. Longerbeam outside on the front porch. Kacy asked her aunt where Appellant was and was told by Mrs. Longerbeam that he had walked down the street. Kacy told Mrs. Longerbeam in no uncertain terms: "[Y]ou need to get him and you need to leave." The record indicates that Mrs. Longerbeam put up no protest and promptly complied with Kacy's directive.

Kacy called the police to report the alleged sexual assault of Marissa G. by Appellant. Officer Patrick Norris initially responded to the call and he contacted Detective Tracy Lynn Edwards to aid in the investigation of the complaint.[7] According to the criminal complaint prepared by Detective Edwards, Kacy informed her that as she walked into the living room on her way to the bathroom she witnessed her uncle on the couch with "his arm underneath" Marissa. The criminal complaint relates that Kacy witnessed Appellant "move[ ] quickly on the couch" after she entered the room. Through the complaint, Appellant was initially charged with two counts of sexual assault in the third degree[8] in connection with this incident. When the grand jury returned its indictment, Appellant was charged with five counts of sexual abuse by a guardian under West Virginia Code

---

2. As is our custom in sensitive matters, we identify the juveniles by initials only. *See Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. The hamster actually belonged to Mrs. Longerbeam, but her sister and nieces were keeping it as the Longerbeams were in the midst of moving out of their residence at this time.

4. At trial, Marissa G. testified that Appellant had been touching her "on my boobs and my butt and my ... [vagina]" when her older sister Kacy walked into the room.

5. Mrs. Longerbeam testified that because of circulation problems Appellant's leg sometimes twitched.

6. Kacy had been sleeping in a first-floor bedroom just down the hall from the living area before she entered the room after having completed a shift of employment at McDonald's at 5 a.m.

7. Detective Edwards testified that she was called by Officer Norris because of her experience in investigating complaints of sexual assault and child abuse.

8. *See* W.Va.Code § 61–8B–5 (2005).

§ 61–8D–5(a), occurring on unspecified dates between January 2006 and June 2007.[9]

At the conclusion of the two-day trial that began on March 3, 2009, Appellant was convicted on one count of touching Marissa G.'s breast in violation of West Virginia Code § 61–8D–5(a). He was sentenced on March 4, 2009, to ten to twenty years in prison for that singular offense. Through this appeal, Appellant seeks a reversal of the conviction based on his position that there was insufficient evidence to convict him of the offense of "sexual abuse by a guardian of a child"[10] under West Virginia Code § 61–8D–5(a). At issue is whether Appellant was properly convicted under the statute that imposes severe and enhanced penalties for sexual abuse committed by four specific classes of individuals.[11]

## II. Standard of Review

■ As we recognized in syllabus point one of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

With this standard in mind, we proceed to determine whether there was sufficient evidence introduced to convict Appellant of sexual abuse by a parent, guardian, custodian, or person in a position of trust with regard to a child under West Virginia Code § 61–8D–5(a).

## III. Discussion

To convict Appellant under West Virginia Code § 61–8D–5(a), the State had to prove that a qualifying act of sexual abuse[12] was performed by a specified class of individual. The four distinct classes of people that the Legislature has imposed enhanced punishment on for acts of sexual abuse are "parent[s], guardian[s] or custodian[s] of or other person[s] in a position of trust in relation to a child under his or her care, custody or control." W.Va.Code § 61–8D–5(a). Rather than disputing the occurrence of a defined act of sexual abuse,[13] Appellant argues that the State did not meet its burden of demonstrating that he fell within the class of entities subject to enhanced penalties for sexual abuse. *See id.*

### A. Custodian

■ Because Appellant was neither the parent or the guardian[14] of the victim in this case, our focus is on whether he qualified as either a "custodian" or a "person in a position of trust" with regard to Marissa G. A "custodian" is statutorily defined as

> a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical posses-

---

9. Three counts were for alleged touching of the victim's breasts and two counts were for alleged touching of her vagina.

10. While it appears that the statute was repeatedly referred to in abbreviated fashion as "sexual abuse by a guardian of a child," the statute is aimed at four classes of individuals: (1) parents, (2) guardians; (3) custodians; and (4) persons in positions of trust. *See* W.Va. § 61–8D–5(a).

11. *See* note 10 *supra.*

12. Under West Virginia Code § 61–8D–5(a) the acts that qualify as abuse are defined as "engag[ing] in or attempt[ing] to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact."

13. *See* note 12 *supra.*

14. Under the pertinent definition, a "guardian" is a "person who has care and custody of a child as the result of any contract, agreement or legal proceeding." W.Va.Code § 61–8D–1(5) (2005).

sion or care and custody of a child with the parent, guardian or custodian.

W.Va.Code § 61–8D–1(4) (2005). Because Mrs. Longerbeam was never alleged to have "actual physical possession or care and custody of" Marissa G., Appellant does not automatically come under the definition of "custodian" as her spouse. *Id.* Given that the second sentence of the definition is clearly inapplicable, we proceed to determine whether Appellant qualified as a "custodian" by examining whether he had "actual physical possession or care and custody" of Marissa G. on a "full-time or temporary basis." *Id.*

The record of this case makes clear that Appellant did not have "actual physical possession" of Marissa G. on a "full-time or temporary basis." Consequently, to come within the statutory definition of "custodian," the State was required to prove that Appellant had "care and custody" of the victim on a "full-time or temporary basis." W.Va.Code § 61–8D–1(4). Because the State sought only to show that the Appellant was the custodian of Marissa G. on limited occasions, we look to see whether he fulfilled the role of "custodian" on a part time basis.

The State argued that the "Longerbeams voluntarily became the custodians of ... Marissa and her sisters when they arrived at the house to respond to the children's request for help" with the escaped hamster. Upon entry into the residence, the State posits that Appellant and his wife became responsible for the "care and custody" of all three girls. As evidence of this assumed duty, the State cites to the fact that the Longerbeams entered the house without knocking and then Mrs. Longerbeam acted in a custodial fashion by telling Marissa G. and Taylor G. to come downstairs. The State contends that Appellant assumed a custodial role with regard to the victim based on the fact that he was the only adult in the room with her at the time of the alleged incident.

In response to these arguments, Appellant points out that Kacy was the person charged by her mother with the responsibility of caring for her two younger sisters, Marissa G. and Taylor G., while their mother was working. The fact that Appellant and his wife came onto the premises upon the invitation of Taylor G. to help locate the hamster did not, according to Appellant, cloak them with any custody-based responsibility towards the three children inside that house. To support his contention that Kacy's status as the child's caregiver was not negated by the presence of her aunt and uncle, Appellant observes that not only did Kacy order the Longerbeams to leave the property upon learning of the alleged abuse, but, as the record indicates, they immediately complied with her request.

The State seeks to sidestep Kacy's position as the intended babysitter or custodian [15] of her sisters by suggesting "that it is possible for an individual to voluntarily become the custodian of the child even when other legal custodians are present." As support for this contention, the State relies upon our determination in *State v. Collins,* 221 W.Va. 229, 654 S.E.2d 115 (2007), that an adult who took a minor child four-wheeling with the permission of the child's mother was a custodian of that child for purposes of West Virginia Code § 61–8D–5(a). The State suggests that under *Collins* it is clear that the "presence" of one legal custodian does not negate another person from also being recognized as a custodian of a minor. In making this argument, the State completely overlooks several factual distinctions between *Collins* and this case. In *Collins,* the individual determined to qualify as a custodian physically removed the victim, with her mother's implicit permission, from her residence and took her to another location to commit the acts of alleged abuse. *See* 221 W.Va. at 234, 654 S.E.2d at 120. On those particular facts, this Court found that the perpetrator of the alleged abuse was a voluntary, temporary custodian. There is nothing even remotely analogous in this case to *Collins* as Appellant did not physically remove Marissa G. from her home with the permission of either her mother or her custodian at the time—her sister, Kacy.

---

**15.** In syllabus point one of *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999), this Court held that a babysitter may fall under the definition of a "custodian" for purposes of the sexual offenses included in West Virginia Code § 61–8D–5.

The record disproves the State's contention that Appellant and his wife became the custodians of their three nieces upon walking into the victim's household. When asked whether she was going to her sister's house "to watch the kids," Mrs. Longerbeam was firm in responding, "No, just going into [sic] catch the hamster." And when she was questioned about whether she would watch the younger two nieces, Taylor G. and Marissa G., "when Kacy was present," Mrs. Longerbeam stated: "No, Kacy watched them." As a follow-up to this inquiry, Appellant's counsel inquired: "So if Kacy was present she would be the person in charge?" In response, Mrs. Longerbeam testified without hesitation "[y]es."

Seeking to dispel the position of responsibility that Kacy occupied with regard to her two younger sisters, the State framed the following argument to the jury in closing:

> I am going to ask you who is in charge when there is an adult and a 12–year–old in the room? The adult. Who is in charge when a 16–year–old is asleep in a bedroom, a 16–year–old who is asleep? Is it the aunt and uncle who are awake in the house? You know the answer[;] it is the adult who is there who is in charge. In fact, [Mrs.] Cindy Longerbeam testified today that she was in charge when the kids were there. Then when Mr. Wrye [Appellant's counsel] asked a few more questions, well, Marissa would ask Kacy. But ask yourselves was the 16–year–old sister in charge or was the adult aunt and adult uncle who are there in charge? I think you know the answer [is] it is clearly the adult.

While the State sought to emphasize the fact that Kacy was sleeping during the alleged touching incident, Kacy testified that "if they [Marissa G. and Taylor G.] needed something they came to me and they knew to stay in the house and not to go anywhere and if they needed something [to] come get me."

The fact that Appellant and his wife were older than Kacy did not vitiate her mother's charge of being the caregiver of her sisters. Similarly, the fact of Kacy being asleep did not in itself abrogate her responsibilities. While it certainly is not ideal for a caregiver to be asleep, the testimony offered by Kacy made clear that her sisters knew the rule of staying in the house and that they were to wake her if they "needed something." [16] Contrary to the picture the State sought to paint for the jury, Kacy remained in charge of her sisters despite the presence of Appellant and his wife. This was demonstrated by the fact that upon learning what had just happened to Marissa G., Kacy immediately confronted her aunt after discovering that her uncle was no longer in the household and demanded that they both leave the premises. The fact that Mrs. Longerbeam complied with Kacy's directive further proves that Kacy was the person in charge of her two younger sisters. Not only did Kacy take control of the situation upon discovering the alleged abuse but she continued to act in a clear-thinking, adult fashion by promptly contacting the police to report the alleged sexual assault.

When the facts of this case are applied to the applicable portion of the statutory definition of "custodian" that requires "care and custody" on at least a part-time basis, we simply cannot conclude that Appellant was a custodian of Marissa G. at the time of the alleged assault in question. The record makes clear that she was not under his care and custody at the time of the incident for which Appellant was convicted. [17] Accordingly, Appellant was not a "custodian" of Marissa G. within the meaning of West Virginia

---

16. We cannot help but note that if the children's mother had been sleeping at the time of the incident the State would not be arguing that the aunt and uncle assumed a custodial role just by walking through the front door. A careful analysis demonstrates that the fact of a caregiver's being asleep does not resolve the critical issue of who was charged with and responsible for the victim's welfare at the time of the incident under review.

17. As evidence that Marissa G. was under the "care and custody" of Appellant within the meaning of West Virginia Code § 61–8D–1(4), the State argues that she was frozen and unable to get up off the couch when the alleged assault took place. The victim's inability to move indicates her powerlessness; it is not evidence of Appellant fulfilling the statutorily-defined position of "custodian."

Code 61–8D–5(a) at the time of the alleged incident of sexual assault.

## B. Person in Position of Trust

■ The only remaining class of individuals encompassed within West Virginia Code 61–8D–5(a) that is potentially applicable to Appellant's conviction is a "person in a position of trust in relation to a child." The statute was specifically amended in 2005 to add this class of persons as subject to the enhanced penalties for committing sexual abuse on children. By definition, this class of individuals includes

> any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

W.Va.Code § 61–8D–1(12).

The State proposes that Appellant occupied a "position of trust" with regard to Marissa G. based on his familial relationship of being an uncle by marriage. Citing extra-jurisdictional case law, the State argues that "it is the position of 'trust, authority or supervision' which often provides a heightened opportunity for ... sexual assault to occur." *People v. Kaminski*, 246 Ill.App.3d 77, 186 Ill.Dec. 4, 615 N.E.2d 808, 811 (1993). Following that observation, however, the court in *Kaminski* proceeded to determine whether the alleged abuser held a position of supervision with regard to the victim on the night of the alleged abuse. 186 Ill.Dec. 4, 615 N.E.2d at 811–12. After reviewing the evidence that included the victim's parents expressly giving her permission to stay with Appellant, her brother-in-law, and his wife, following a group meeting that had taken place at the victim's parents' home, the trial court had no difficulty concluding that "both defendant and Roberta [his wife] were responsible for looking after the welfare of the

victim on the night in question." 186 Ill.Dec. 4, 615 N.E.2d at 812. These facts contrast severely to the evidence in this case. Marissa G. did not leave the premises of her own home on the day in question and she was not under the supervision, or to be statutorily-specific "care, custody or control," of Appellant when she was subject to the alleged abuse.

While we do not mean to minimize the criminal significance of adults who prey upon their victims based on a familial or any other relationship that typically implies a sense of security to the child, the relationship must still play a part of the actual incident of abuse to come within the meaning of West Virginia Code § 61–8D–5(a). *See Williams v. State*, 895 N.E.2d 377, 382 (Ind.App.2008) (recognizing that familial relationship is not "tantamount to being in a position of trust" and that previous residence of alleged abuser in victim's neighborhood is not proof of element of trust "at the time of the offenses"). This is clear from the statutory language that follows the delineation of the classes of individuals who are subject to the offense. Not only does the statute require proof that the alleged abuser fell within the specified class of delineated individuals, but the offense requires that the act of abuse must occur with "a child under his or her care, custody or control." W.Va.Code § 61–8D–5(a).

The State argues that the evidence makes clear that Appellant occupied a position of trust in relation to Marissa G. on June 8, 2007, the date of the alleged abuse for which Appellant was convicted. Yet, the only evidence that the State relies upon as proof that Appellant occupied the temporally relevant status of a "person in position of trust" with regard to the victim on the date in question is *prior* instances of supervision of Marissa G. that took place at the residence of Appellant and his wife.[18] While those previous instances could be relied upon to establish that there were occasions when Appellant

---

18. The State suggests that "[t]here is no evidence to suggest that the Defendant would not have occupied the same position of trust by virtue of his position than he had on any other occasion when he was alone with Marissa." To suggest

that the State could prove the elements of the offense by virtue of Appellant's failure to disprove prior instances of presumed trust is not only sophistic, but possibly unconstitutional.

was responsible for the "general supervision" of the victim's "welfare," those instances do not establish that he was acting in that capacity—as a "person in a position of trust"—on the date in question.[19] W.Va.Code § 61-8D-1(12). The record in this case falls woefully short of demonstrating either that the victim's mother or her sister Kacy had charged Appellant with supervisory responsibilities towards Marissa G. on the subject date or that Appellant occupied any position by which he was statutorily charged with such responsibility. *See* W.Va.Code § 61-8D-1(12). As we discussed at length in the "custodian" section of this opinion, the evidence presented at trial was that the victim's sister, Kacy, was the individual who was charged with and retained that supervisory responsibility. Accordingly, we conclude that the State did not establish that Appellant was a "person in a position of trust" with regard to the victim within the meaning of West Virginia Code 61-8D-5(a).

Based on the foregoing conclusion that there was insufficient evidence to convict Appellant for committing an offense under West Virginia § 61-8D-5(a) as either a "custodian" or a "person in a person of position of trust,"[20] we find that the trial court committed error by not granting Appellant's post-trial motion for an acquittal.[21] Accordingly, we reverse.

Reversed.

Justices BENJAMIN and WORKMAN dissent and reserve the right to file dissenting opinions.

BENJAMIN, Justice, dissenting:

I respectfully dissent to the majority opinion because I believe that sufficient evidence

was adduced at trial to support the appellant's conviction.

As set forth in the majority opinion:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Viewing the evidence in the light most favorable to the prosecution, there is sufficient evidence that the appellant and his wife were viewed by the children as persons in positions of trust who were in control of the children at the time the appellant committed the offense for which he was convicted.

The evidence indicates that the appellant was the victim's uncle by marriage, and the appellant had access to the victim due to this fact. Further, the appellant's access to the victim presupposed an assumption of control and supervision in that the children called the appellant and his wife for help in catching a loose hamster instead of waking their older sister. Stated another way, the appellant's role as uncle and his presence in the home in order to assist the children created the control which permitted the sexual assault to occur. In addition, the victim testified that during the sexual assault, she did not move away from the appellant until her older sister entered the room because she did not think that she could leave. Thus, the victim's perception of the appellant's control

---

**19.** We disagree with the State's contention that the statute does not require the alleged abuser to be in a position of trust at the time of the act. To make this argument is to nullify the language which requires that the act of abuse occur with "a child under his or her [alleged abuser's] care, custody or control." W.Va.Code § 61-8D-5(a).

**20.** To be clear, we are not ruling that there was insufficient evidence that Appellant committed an act of sexual abuse with regard to the vic-

tim—only that the State failed to meet its burden of demonstrating that the abuse properly fell under the provisions of West Virginia § 61-8D-5(a) and its correspondent enhanced penalties.

**21.** Because we reverse on other grounds, we do not address Appellant's contention that the trial court confused the jury with an erroneous jury verdict form.

over the situation was integral to the appellant's execution of the assault. Therefore, it is clear to me that there is sufficient evidence that the appellant was a person in a position of trust at the time of the sexual assault to support his conviction.

Significantly, Kacy, the older sister, did not exert her control over her younger siblings until after the appellant committed the alleged offense. While it is true that Kacy confronted Mrs. Longerbeam and demanded that she and the appellant leave the premises, this occurred subsequently to the appellant's crime. Thus, the fact that Kacy ultimately exercised her control over the household does not mitigate the fact that the children perceived the appellant and Mrs. Longerbeam to be in control prior to that time.

In sum, I believe that a review of all of the evidence in the light most favorable to the prosecution, compels the conclusion that a rational trier of fact could have found the essential elements of the appellant's crime proved beyond a reasonable doubt. For this reason, I would affirm the appellant's conviction. Accordingly, I respectfully dissent to the majority opinion.

WORKMAN, Justice, dissenting:

The Appellant was the victim's fifty-five-year-old uncle who, along with his wife, was called to the home where their three underage nieces were alone. When the adults arrived, they entered the victim's home without knocking. The Appellant's wife asked the children to come downstairs and the children complied with her directive. Moreover, the sixteen-year-old sister who the majority characterizes as being "in charge" of the victim was actually sleeping at the time the Appellant arrived and, therefore, was not actively watching her sisters.

The Appellant was convicted of one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child in violation of West Virginia Code § 61–8D–5(a) (2005). The majority concludes that the circuit court erred by denying the Appellant's post-trial motion for a judgment of acquittal based upon the Appellant's argument that he does not meet the definition of any of the specified classes of individuals in West Virginia Code § 61–8D–5(a). I dissent because the question of whether a criminal defendant meets the statutory definitions of either a custodian or a person of trust has consistently been held to be a question of fact for the jury to decide.

West Virginia Code § 61–8D–5(a) provides, in pertinent part:

> If any parent, guardian or *custodian of or other person in a position of trust in relation to a child under his or her care, custody or control,* shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony . . . .

*Id.* (emphasis added). A custodian is further defined in West Virginia Code § 61–8D–1(5) (2005) as "a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding." *Id.* Further, a "person in a position of trust in relation to a child"

> refers to any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

*Id.*

Very recently, in *State v. Edmonds,* 226 W.Va. 464, 702 S.E.2d 408, 2010 WL 4272851 (2010), a decision not even mentioned in the majority opinion, this Court was confronted

with the precise question presented in the instant case. In *Edmonds,* the defendant claimed that the State presented insufficient evidence at trial to establish that he was a "person in a position of trust"[1] to the sixteen-year-old victim in the case and that the victim was under his "care, custody or control" at the time of the alleged offense. *Id.* at 465, 702 S.E.2d at 409, 2010 WL 4272851 at *1.

The Court first examined whether the evidence was sufficient for a jury to find that the defendant was a "person in a position of trust." In upholding the jury's verdict on this issue, the Court noted that it has repeatedly found that whether a person falls within one of the four classes of individuals set forth in the provisions of West Virginia Code § 61–8D–5 is a question of fact for the jury. *See* Syl. Pt. 1, *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999)(holding that "[a] babysitter may be a custodian under the provisions of *W. Va.Code,* § 61–8D–5 [1998], and whether a babysitter [is] in fact a custodian is a question for the jury"); *see also State v. Collins,* 221 W.Va. 229, 232–34, 654 S.E.2d 115, 118–20 (2007)(determining that whether an adult who took an eleven-year-old girl four-wheeling on multiple occasions with the implicit permission of the child's mother was a temporary custodian under the provisions of West Virginia Code § 61–8D–5 (2005) was a question for the jury); *State v. Cecil,* 221 W.Va. 495, 502, 655 S.E.2d 517, 524 (2007)(finding that there was sufficient evidence to support jury's determination that the defendant was a "custodian" of minor victims so as to uphold conviction of defendant for sexual abuse by a custodian where the defendant was the father of victim's friend).

In the instant case, however, the majority usurps the jury's role. First, the majority concludes that because the sixteen-year-old sister of the victim was "babysitting" the victim at the time of the incident, the Appellant could not be the custodian. To reach such a conclusion, the majority rejects the State's evidence that the Appellant and his wife, the victim's aunt, were called to the

victim's home on the day of the incident for help in catching a hamster that had gotten loose.

The majority, likewise, rejects the jury's determination that the Appellant was a person in a position of trust in relation to a child. Again, the majority hinges its determination on its conclusion that the victim's sister was "the individual who was charged with and retained that supervisory responsibility." Once again, in reaching its conclusion, the majority rejects the State's evidence that the Appellant was the victim's uncle by marriage. The Appellant's wife also testified that the victim and her sisters had spent the night at their aunt and uncle's home on several occasions and there was evidence that the Appellant had supervised the victim on several prior occasions.

Regarding the majority's conclusion that the Appellant was not a person in a position of trust in relation to the victim, the majority does not reconcile its decision with that reached by the Court in *Edmonds.* By way of analogy, there were others (even adults) "in charge" of the victim at the school she attended on some of the occasions that the defendant in the *Edmonds* case molested her. Yet this Court made clear that the issue of whether the defendant in that case occupied a "position of trust" under the statute was a jury issue. In *Edmonds,* the same issue was before the Court concerning whether the jury had been presented with sufficient evidence to find that defendant was "a person in a position of trust" as the phrase is defined in the statute. W. Va.Code § 61–8D–1(12). Significantly, the Court focused upon the following:

> The jury heard testimony from multiple witnesses that the defendant maintained a consistent presence at the school and church. The defendant performed maintenance around the school/church building on multiple occasions. Angel testified that the defendant assisted her with her school work.... There was also testimony that the defendant played an active role in the church. He led the church in prayer and

---

1. The circuit court also instructed the jury on the statutory definition of custodian. *Edmonds,* 226

W.Va. at 467, 702 S.E.2d at 411, 2010 WL 4272851 at *3.

was twice listed as an "Associate Youth Pastor" in the church bulletin.

*Edmonds,* 226 W.Va. at 469, 702 S.E.2d at 413, 2010 WL 4272851 at *5. All of the foregoing evidence which this Court found sufficient to sustain the jury's verdict of conviction in *Edmonds* involved "prior" instances of supervision between the defendant and victim. Yet, in the instant case, when similar type evidence was introduced by the State to prove that the Appellant was a person of trust, it is rebuked by the majority. Specifically, the majority states that

> the only evidence that the State relies upon as proof that Appellant occupied the temporally relevant status of a "person in position of trust" with regard to the victim on the date in question is *prior* instances of supervision of . . . [the victim] that took place at the residence of Appellant and his wife. While those previous instances could be relied upon to establish that there were occasions when Appellant was responsible for the "general supervision" of the victim's "welfare," those instances do not establish that he was acting in that capacity—as a "person in a position of trust"—on the date in question.

(footnote omitted).

Additionally, the majority reaches the conclusion in a summary fashion that the victim in the instant case was not under the "care, custody or control" of the Appellant at the time she was subject to the alleged abuse, thus substituting the majority's own judgment for the factual findings of a properly instructed jury. *See* W. Va.Code § 61–8D–5(a). The Court's decision in *Edmonds,* however, provides guidance as follows, which again, was not utilized by the majority:

> The terms care, custody and control are not statutorily defined. Absent a statutory definition of these terms, we will necessarily defer to the "common, ordinary, and accepted meanings of the terms in the connection in which they are used." *In re Clifford K.,* 217 W.Va. 625, 640, 619 S.E.2d 138, 153 (2005). The word "care" is defined as "[s]erious attention; heed." Black's Law Dictionary 240 (9th ed.2009). "Custody" is defined as "[t]he care and control of a thing or person for inspection,

preservation, or security." *Id.* at 441. "Control" means "[t]o exercise power or influence over." *Id.* at 378.

*Edmonds,* 226 W.Va. at 469, 702 S.E.2d at 413, 2010 WL 4272851 at *6.

The Court, in *Edmonds,* then focused on the encounters between the defendant and victim. The Court found that the defendant exercised control over the victim by instructing her on where to lie down, where to sit and not to tell anyone. *Id.* In the instant case, the State offered evidence that the victim was scared and froze most of the time. Thus, there was evidence for the jury to conclude that the Appellant's exercise of power and influence over the victim caused such fear in her that she could not avoid or get away from the abuse inflicted upon her by her uncle.

While the majority correctly sets forth the standard of review applicable to sufficiency of the evidence, they do not set forth another part of the equation in their review. In syllabus point three of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

The majority ignores the Appellant's heavy burden and sets aside the jury verdict where the State did present evidence from which the jury properly convicted the Appellant of the crime charged. *Id.*

In so doing, the majority has taken a statute, West Virginia Code § 61–8D–5, that in

2005 was expanded by the Legislature to include an even broader group of individuals and, at least in this case, rendered the statute meaningless by construing the statute in restrictive manner and in substituting its judgment of the facts for that of the jury. As the Court has previously held,

> "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). It is presumed that each word in a statute has a definite meaning and purpose. *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 3, *United Steelworkers of America, AFL–CIO, CLC v. Tri–State Greyhound Park*, 178 W.Va. 729, 364 S.E.2d 257 (1987) (citing Syllabus Point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, V.F.W.*, 147 W.Va. 645, 129 S.E.2d 921 (1963)). Courts should favor the plain and obvious meaning of a statute as opposed to a narrow or strained construction. *Thompson v. Chesapeake &*

*O. Ry. Co.*, 76 F.Supp. 304, 307–308 (S.D.W.Va.1948).

*T. Weston, Inc. v. Mineral County*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006). The majority has construed this statute in such a narrow manner that the victim's uncle who sexually assaulted his twelve-year-old niece does not, *as a matter of law*, fall within the statutory purview of "a parent, guardian, custodian, or person in a position of trust to a child," notwithstanding ample evidence to support the jury's factual conclusion that he was a custodian and "person in a position of trust" to his niece. W. Va.Code § 61–8D–5(a). This construction by the majority violates the most basic tenets of statutory construction.

The majority's decision that, as a matter of law, the Appellant does not fall within one of the four statutory classes of individuals effectively renders the well-established role of the jury in this decision as meaningless. For the foregoing reasons, I respectfully dissent.