487 S.E.2d 302

**STATE of West Virginia ex rel. Dickie F. WIMMER, Petitioner Below, Appellant,**

v.

**George TRENT, Warden, West Virginia Penitentiary, Respondent Below, Appellee.**

**No. 23554.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1997.

Decided March 21, 1997.

Rehearing Refused June 5, 1997.

---

**13.** Connecticut, *Conn.Gen.Stat.* § 52–557a [1963]; Illinois, 740 *ILCS* 130/2 [1995].

Lena S. Hill, L.C., Pineville, for Appellant.

Rory L. Perry, II., Assistant Attorney GeneralCharleston, for Appellee.

PER CURIAM:

This is an appeal by Dickie F. Wimmer from a decision of the Circuit Court of Wyoming County denying him relief in a habeas corpus proceeding. Mr. Wimmer is presently confined in the West Virginia Penitentiary serving two life sentences for the murder of his son and his daughter, and in this proceeding he is claiming that he was denied effective assistance of counsel during his trial for the murder of his son. He is also claiming that a confession adduced against him during his murder trial was unconstitutionally coerced, and that the trial court had committed certain trial errors. After reviewing the issues raised and the documents filed, this Court disagrees with Mr. Wimmer's assertions. The judgment of the Circuit Court of Wyoming County is, therefore, affirmed.

On the evening of January 15, 1979, the appellant, Dickie F. Wimmer, who was separated from his wife, and who had been drinking, visited an apartment where his wife and two infant children were staying with friends. After the appellant entered the apartment

his wife's friends left, leaving her and the children alone with the appellant.

At around 9:00 p.m. a neighbor heard four or five shots coming from the apartment. Some fifteen minutes later an excited man, who was later identified as the appellant, appeared at another neighbor's door and asked the neighbor to call an ambulance. Upon arriving at the scene the ambulance driver found that the appellant's wife and two infant children were dead, apparently due to gunshot wounds. At around 9:30 p.m. the Chief of the Oceana Police arrived at the scene, and at that time, the appellant spontaneously told the chief, "I shot them all."

At that point the chief advised the appellant of his *Miranda* rights and took the appellant into custody. On the next day, January 16, 1979, the appellant was arraigned and indicated that he had retained counsel to represent him. Later, at 4:00 p.m. a Trooper Baker began to interrogate him after advising him of his constitutional rights. At 4:15 p.m. the appellant signed a waiver of rights and indicated that he was willing to proceed. According to troopers who were then present, the appellant did not request the presence of an attorney. Shortly thereafter, the appellant, who according to Trooper Baker was remorseful, indicated that he wished to make a statement. He then admitted that he had shot his wife and two children. This statement was reduced to writing and was signed by the appellant.

In investigating the murders further, the police obtained other evidence tending to implicate the appellant. For instance, the appellant's girlfriend indicated, and later testified, that the appellant had told her that he had purchased a gun to kill his wife because he didn't want another man raising his children. His brother-in-law indicated that the appellant had threatened to kill his family about a week before the murders had occurred. The appellant's foreman at work stated that the appellant had told him about three weeks before the shooting that he was going to kill his wife. The appellant had repeated this about a week before the mur-

ders. A co-worker testified that the appellant, after receiving divorce papers, had become very upset and had threatened to kill his wife and her lawyer in court. The co-workers's wife testified that the appellant had again threatened to kill his wife on January 7, eight days before the killings occurred.

The police also found evidence that on December 30, 1978, the appellant had purchased the .357 magnum pistol, which had been used in the commission of the murders, and that he had been target practicing with the pistol in the hours preceding the murders.

The appellant was tried for the murder of his son in May 1979, and at the conclusion of the trial the jury found the defendant guilty of first-degree murder. The jury recommended mercy. The appellant was tried for the murder of his daughter in December 1979, and at the conclusion of that trial he was found guilty of first-degree murder, without a recommendation of mercy.

Following his conviction for the murder of his son, the appellant filed a petition for appeal with this Court, but this Court denied the petition on January 19, 1980. Thereafter on August 20, 1987, the appellant filed the petition for a writ of habeas corpus involved in the present case in the Circuit Court of Wyoming County. For the following seven years the habeas corpus was entangled in numerous procedural difficulties involving the substitution of attorneys and the transfer of the case among circuit judges. On October 26, 1994, this Court issued an order directing the appellee, Warden of the West Virginia Penitentiary, to produce the appellant before the Circuit Court of Wyoming County for the purpose of examining his habeas corpus claim. An attorney was appointed for the appellant at that time.

On January 18, 1995, the appellant's newly appointed attorney filed an amended addition for writ of habeas corpus in which it was alleged that the appellant was denied effective assistance of counsel during his trial for the murder of his son. It was also alleged that the January 16, 1979, confession was

coerced and that the trial court had committed a number of trial errors.

A habeas corpus hearing was conducted on July 5, 1995, and following that hearing on November 28, 1995, the circuit court denied the appellant the habeas corpus relief which he sought. The Court concluded that except for the claims of ineffective assistance of counsel and coercion of the confession, the appellant's claims were basic trial errors that did not give rise to error of constitutional dimension and were, therefore, not reviewable by way of habeas corpus. The court also found that the appellant's attorney during his trial for the murder of his son demonstrated performance which was not outside the broad range of professionally competent assistance, and also concluded that even if the attorney's conduct was incompetent, such incompetency would not have changed the result of the proceedings. The court noted that defense counsel's advocacy in the case under consideration resulted in a life sentence with a recommendation of mercy, whereas the appellant was found guilty of first-degree murder without mercy in his trial for the murder of his daughter, a trial in which the appellant was represented by the same attorney. The circuit court also found that the confession which the appellant challenged was voluntarily obtained and not coerced.

In the present appeal the defendant claims that the circuit court erred in refusing to grant him habeas corpus relief.

On appeal, as in his habeas corpus proceeding, the appellant predicates his claim of entitlement to relief on trial errors as well as claims of ineffective assistance of counsel and a coerced confession.

■ With regard to trial error this Court notes that in syllabus point 4 of *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied*, 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983) this Court stated:

A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed.

■ This Court has looked at the trial error alleged by the appellant to have been committed by the trial court, and, in particular, this Court has looked at the appellant's claims that the trial court erred in allowing certain jurors to remain on the panel and that the prosecutor engaged in prosecutorial misconduct by making allegedly improper remarks. The court does not believe that those errors even if supported by the record would implicate the appellant's constitutional rights in such a manner as to be reviewable on habeas corpus or that they establish manifest injustice.

■ On the other hand, the court does believe that the claims of ineffective assistance of counsel and the use of a coerced confession are questions which rise to a constitutional level.

■ The standard by which ineffective assistance of counsel claims should be assessed was recently set forth by this Court in syllabus point 5 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) as follows:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

■ In arguing that he was denied effective assistance of counsel the appellant, in effect, takes the position that ineffectiveness should be manifest from the fact that his attorney began working on the case only briefly before trial and could not have had ample time to prepare for it.

The record indicates that the appellant's attorney during the appellant's trial for the murder of his son was retained by the appellant on April 18, 1979, a short time before the trial in May 1979, after the appellant had

become dissatisfied with his court-appointed attorney. The court-appointed attorney had already done substantial work in preparation for the case, and it appears that the appointed attorney, to some extent, assisted the retained attorney in preparing for trial. The retained attorney was experienced in criminal matters, and did have a substantial opportunity to do preparatory work, even though he confronted substantial problems including the fact that the appellant had repeatedly threatened to kill members of his family in the period immediately before the killings, that he bought the murder weapon, that he was on the scene at the time of and immediately after the murders, and that he spontaneously said "I shot them all" when the police first arrived on the scene.

In an effort to demonstrate prejudice from lack of preparation time the appellant argues that his counsel, with more time to prepare, could have made a much stronger case for a change of venue. He could have had time to conduct telephone surveys of sentiment against him in the community and could have adduced certain affidavits to buttress his position. It appears that at trial substantial evidence was adduced in support of the motion for change of venue, and at the habeas corpus hearing no evidence was introduced to prove that telephone surveys or the desired affidavits would have altered the correctness of the trial court's venue ruling.

To demonstrate prejudice arising from a lack of adequate preparation time the appellant also suggests that his attorney did not have adequate time to interview witnesses meaningfully and that he did not interview them properly. On this point there is evidence that trial counsel did have the benefit of work done by the previously appointed attorney on witnesses. There is also evidence that he did cross-examine the state's witnesses during trial, and he did call crucial witnesses and present crucial evidence in the appellant's behalf. Further, during the habeas corpus hearing the appellant produced no expert evidence from practicing attorneys to suggest that his attorney's preparation was inadequate.

■ In addition to claiming that ineffectiveness of counsel should be manifest from the lack of preparation time available to his attorney, the appellant specifically claims that his attorney was ineffective when he failed to offer jury instructions on the effect of intoxication on the appellant's capacity to commit the crime charged.

As indicated in *State v. Miller, supra,* to establish ineffective assistance of counsel, not only must it be shown that there was conduct which was professionally incompetent, but it must also be shown that there is a reasonable probability that but for the alleged unprofessional errors the result in the proceedings would have been different.

There was substantial evidence adduced during the appellant's trial supporting the conclusion that the appellant premeditated the killings and that they were not the simple result of intoxication. As previously indicated, the appellant purchased the pistol used in the killings some two weeks before the killings occurred, and he repeatedly indicated to friends and acquaintances in the week prior to the murders that he was planning to kill members of his family. Under the circumstances the court believes that even if the instruction had been given, it is not reasonably probable that the jury would have found differently given the overall evidence in the case.

■ The appellant also argues that his attorney failed to seek an independent mental evaluation to support a possible defense of diminished capacity.

During his habeas corpus hearing the appellant failed to introduce any expert testimony or any other meaningful evidence that any sort of diminished capacity claims could be supported by medical evidence. There was ample evidence that the appellant was fully aware of what was going on and was in charge of his faculties just prior to trial. Further, the appellant did not present evidence tending to show that a reasonably competent defense attorney would have pursued a diminished capacity defense under the

circumstances of his case. Additionally, it is entirely plausible that defense counsel may have determined not to pursue the defense of diminished capacity as a strategic choice for fear of alienating the jury or causing them to be hostile to his client.

■ The appellant's last claim relating to ineffective assistance of counsel is that his trial attorney failed to request an instruction on the voluntariness of the written confession.

As indicated in *State v. Miller, supra,* not only must the appellant show that there was ineffective assistance of counsel, but he must also show that the ineffectiveness affected the outcome of the trial. In this case the State had very substantial and compelling evidence upon which to convict the appellant totally apart from the written confession. To repeat what has been previously said: The defendant repeatedly threatened to kill members of his family prior to the killings; he bought the gun which was used; he was present with the murdered individuals at the time of the killings; and, apart from his written confession, he spontaneously said, "I shot them all" when the police first arrived on the scene. In view of the foregoing, this Court cannot find that there is a reasonable probability that, but for the failure of appellant's attorney to offer an instruction on the voluntariness of the written confession, the result of the proceedings would have been different.

■ The final major assertion by the appellant in this appeal is that the circuit court erred in failing to grant him habeas corpus relief on the ground that his written confession was not voluntary.

■ In syllabus point 7 of *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 196, 133 L.Ed.2d 131 (1995) this Court stated:

When evaluating the voluntariness of a confession, a determination must be made as to whether the defendant knowingly and intelligently waived his constitutional rights and whether the confession was the product of an essentially free and unconstrained choice by its maker.

The circumstances surrounding the taking of the written confession in issue in the present case were heard at trial, and the trial judge determined that the confession was voluntary. At the habeas corpus hearing further evidence was submitted by both the appellant and the State regarding the confession. Following the hearing the judge reviewed the circumstances of the confession and resolved the conflicting evidence on the voluntariness question. The habeas corpus judge concluded that the totality of the circumstances and the most credible evidence pointed to the fact that the appellant had waived his rights and the written statement was given freely and voluntarily and without coercion.

In looking at the evidence, on the voluntariness of the confession, this Court believes that it was essentially conflicting. The trial court looked at that conflicting evidence and resolved the conflicts against the appellant. The judge in the habeas corpus proceeding did the same. This Court does not believe that the appellant on appeal has pointed to any circumstance so compelling as to require this Court to resolve the conflicts on the voluntariness issue in his favor, nor to reverse the decisions of the trial court and the habeas corpus judge on this point.

For the reasons stated, the judgment of the Circuit Court of Wyoming County is affirmed.

Affirmed.