702 S.E.2d 408

**STATE of West Virginia, Appellee,**

v.

**Timothy C. EDMONDS, Appellant.**

No. 35474.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 12, 2010.

Decided Oct. 28, 2010.

year-old female victim; and (2) that the female victim was under his "care, custody or control" at the time the alleged offenses occurred.

For the reasons stated below, we affirm.

## I.

### Facts & Background

On November 14, 2008, the defendant was indicted on seven counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child pursuant to *W.Va. Code*, § 61–8D–5(a) [2005]. These charges resulted from sexual contact the defendant allegedly had with a sixteen-year-old female, Angel G.[1]

The defendant's trial began on January 26, 2009. The State called Angel G.'s mother, who testified that Angel took special education classes in grade school, middle school, and at Riverside High School. Angel had a "difficult time" during her ninth grade year at Riverside and had a problem saying no to her fellow students. Angel's mother testified that Angel "got beat up" at Riverside and "kids took her things." Due to these problems, Angel's parents removed her from Riverside and sent her to a small Christian school, Upper Kanawha Valley Christian School, beginning in August 2005.[2]

In April 2006, Angel's mother found a note in her daughter's pillowcase that was addressed to "Tim" and described intimate kissing. This note led to a discussion in which Angel revealed that "Tim" was Timothy Edmonds, a man in his early thirties who Angel knew from Upper Kanawha Valley Christian School. This school is physically connected to Chesapeake Apostolic Church. The church and school are operated by the defendant's wife, Karin Edmonds; father-in-law, Pastor Philip Priddy; and mother-in-law, Patricia Priddy.

Angel G. told her mother that she and Mr. Edmonds intimately kissed and had sexual

Jason D. Parmer, Esquire, Assistant Public Defender, Kanawha County Public Defender's Office, Charleston, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Benjamin F. Yancey, III, Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

This is an appeal of a final order from the Circuit Court of Kanawha County sentencing the defendant/appellant Timothy C. Edmonds (hereinafter "Mr. Edmonds" or "defendant") to serve not less than ten nor more than twenty years in the state penitentiary upon being convicted of three counts of sexual abuse by a custodian or person in a position of trust pursuant to *W.Va.Code*, § 61–8D–5(a) [2005]. On appeal, Mr. Edmonds claims the State presented insufficient evidence at trial to establish: (1) that he was a "person in a position of trust" to the sixteen-

---

1. As is our practice in cases involving sensitive matters, we use the child's initials rather than her full name to identify her. *See Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 202 n. 1, 455 S.E.2d 570, 571 n. 1 (1995).

2. This school had an enrollment of twelve students at the time the alleged sexual encounters between Angel G. and the defendant occurred. These twelve students ranged in age and grade level but were all taught in one large classroom.

contact at both the school and in a house he was remodeling near the school. After this conversation, Angel's mother and father decided to confront the defendant at his residence. While driving to the defendant's residence, Angel's parents encountered a West Virginia State Trooper, Sergeant Larry O'Bryan, who told them to return home, assuring them that he would start an investigation into the matter.[3]

The State next called Angel G. who testified that she knew the defendant from school, stating that he helped Pastor Priddy do maintenance work around the school and the church. Angel further testified that the defendant helped her with her school work, helped monitor students at the school and participated in church services. Angel G. testified that she had sexual contact with the defendant in a "little kids room" in the basement of the school/church. On this occasion, she stated that the defendant laid her down and "he got on top of me and started running his private part on my private part." After this encounter, Angel stated that the defendant told her not to tell anyone because he could get in trouble and would not be allowed to continue preaching at the church. Angel testified that the next sexual encounter she had with the defendant occurred in a storage room in the basement of the school/church. As with the previous encounter, Angel stated that the defendant "laid me down and started rubbing his private part on my private part."

Angel testified that she had two sexual encounters with the defendant at a house he was remodeling located near the school. On the first occasion, Angel testified that she walked to the house, the defendant invited her in and took her into a room with a rocking chair. She stated that she was standing up and the defendant "rubbed his private part on my bottom, and I turned around and he was ... zipping his pants back up." The defendant then told her to sit in the rocking chair, took pictures of her legs and according to Angel, told her that "there was a contest about the prettiest legs. And he told me that 'You would definitely win, because you have the prettiest legs.'" The

defendant then placed couch cushions on the floor in the room with the rocking chair. He told Angel to lay on the cushions and "starting rubbing his private part on my private part."

Angel testified that on another occasion, she was walking home from school and the defendant picked her up in his van and drove them to the house he was remodeling. On this occasion, the defendant gave her a pair of pantyhose to wear. He then locked the front door, took her to the room with the rocking chair and "rubbed his private part on my private part." Angel stated that she wore the pantyhose during this encounter and still had them on when she returned home. She kept the pantyhose in a drawer at home and eventually turned them over to her mother after her mother found the note she had written to the defendant.

The State also called Sergeant Larry O'Bryan, who interviewed Angel G. and subsequently obtained permission from the defendant to search the remodeled house. Sergeant O'Bryan recovered the couch cushions from this house and later obtained the pantyhose from Angel's mother. Two forensic experts testified that semen was found on the pantyhose and that the DNA profile on the pantyhose was consistent with the defendant's DNA profile. Following the testimony of these forensic experts, the State rested.

At the conclusion of the State's case, defense counsel moved to dismiss all seven counts in the indictment. He argued that the State presented no evidence that the defendant was a custodian or a person in a position of trust in relation to Angel G. He also argued that Angel G. was not under the defendant's care, custody or control at the time the alleged sexual encounters occurred.

Circuit Judge Berger denied defense counsel's motion, stating:

I find first of all that the issue of whether or not this defendant was a custodian and/or a person in a position of trust in relation to this child is an issue for the jury to determine ... when you look at the

---

**3.** Sergeant O'Bryan was at the scene of a fire on West Virginia Route 94, the road Angel's parents were traveling to get to the defendant's residence. The road was closed due to the fire.

statute which refers to "or a person in a position of trust"... it is rather broad.

There's been testimony here that on Sundays this defendant assisted in the services at the church. There was testimony by her that he at times in class helped her with her work, her classroom work. There's the evidence that you lawyers have pointed out about her relationship with him. And so, I believe that I find that it's an issue for the jury to determine whether or not this man was a custodian and/or a person in a position of trust in relationship to this child.

Following this ruling, the defendant presented his case. The defense called Patricia Priddy, the defendant's mother-in-law, who worked at the school. She stated that the defendant, who was attending college at the time these allegations were made, came to the school on Tuesdays to do his homework. The defendant sat at a desk in the classroom while doing his homework. Ms. Priddy testified that the defendant helped "count pages" for a student named Michael.[4] She also testified that the defendant occasionally helped her husband, Pastor Priddy, do maintenance projects around the school/church, including putting up Sheetrock in the basement. She stated that the defendant did not teach, but he did lead prayer. During cross-examination, Ms. Priddy stated that on two different occasions the defendant was listed as an "Associate Youth Minister" in the church bulletin.

Pastor Philip Priddy was called by the defense and stated that the defendant did not have an official position with the church. Pastor Priddy testified about the size and condition of the storage room in the church where one of the alleged sexual encounters took place, stating that the storage room "runs just about 8 × 9 ... It had quite a few of what we call tubs. It was plastic containers, pretty well full." He testified that with these containers in the room "[t]here's no

way that a person would even be able to lie down."

The defendant testified on his own behalf and stated that he did not have an official position with the church or the school. He stated that he had no sexual contact with Angel G. Angel G. did come to the house he was remodeling on two occasions, but he stated that he did not have sexual contact with her at this house. Following the defendant's testimony, the defense rested.

Circuit Judge Berger's charge to the jury included the following instruction:

> [T]he term "custodian" means a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding.

> Further, the Court instructs the jury that "a person in a position of trust in relation to a child" refers to any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

The jury acquitted the defendant on counts one through four of the indictment, which related to the alleged sexual encounters that occurred at the school/church, and convicted him of counts five through seven, which involved the alleged sexual encounters that occurred at the remodeled house. By final order dated April 16, 2009, the circuit court sentenced the defendant to serve not less than ten nor more than twenty years upon his conviction of counts five, six and seven.[5] The defendant appeals from this order.

---

4. The school used the Paces program. In this program, a student must complete 25 pages in a workbook each day. Ms. Priddy testified that the defendant counted Michael's pages to make sure he was completing his assigned work.

5. The circuit court ordered the defendant to serve not less than ten nor more than twenty years for each count, but ordered the sentences to run concurrently to each other, for an effective sentence of not less than ten nor more than twenty years.

## II.

### Standard of Review

■ On appeal, the defendant raises the issue of whether sufficient evidence was presented for the jury to find that he was a "person in a position of trust" in relation to Angel G., and whether she was under his "care, custody or control" at the time the alleged offenses occurred. This question requires us to interpret *W.Va.Code,* § 61–8D–5(a) [2005]. "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ After examining *W.Va.Code,* § 61–8D–5(a) [2005], we must determine whether the State presented sufficient evidence for the jury to conclude that the defendant violated this statute. In Syllabus Point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), we held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

With these standards in mind, we consider the defendant's arguments.

## III.

### Discussion

Our analysis begins with *W.Va.Code,* § 61–8D–5(a) [2005] [6], which states:

(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to the child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child [7] under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than ten years nor more than twenty years.

Prior to 2005, this statute did not include the phrase "or person in a position of trust," rather, the class of potential defendants was limited to "any parent, guardian or custodian." *See W.Va.Code,* § 61–8D–5 [1998]. This Court interpreted *W.Va.Code,* § 61–8D–5 [1998], in *State v. Stephens,* 206 W.Va. 420, 525 S.E.2d 301 (1999), holding in Syllabus Point 1 that:

> A babysitter may be a custodian under the provisions of *W.Va.Code,* § 61–8D–5 [1998], and *whether a babysitter [is] in fact a custodian is a question for the jury.*

(Emphasis added).

We also analyzed this statute in *State v. Collins,* 221 W.Va. 229, 654 S.E.2d 115 (2007), and determined that whether an adult who took an eleven-year-old girl "four-wheeler riding" on multiple occasions was a custodian under *W.Va.Code,* § 61–8D–5 [1998], was a question properly decided by the jury.

---

6. *W.Va.Code,* § 61–8D–5, was amended in 2010. The 2010 amendment made nonsubstantive changes to subsection (a) of the statute. Specifically, the phrase "a correctional facility" was changed to "the penitentiary" in two places. Our analysis herein will rely on the 2005 version of the statute, as that was the law in effect at the time these offenses allegedly occurred.

7. *W.Va.Code,* § 61–8D–1(2) [2005], states, " 'Child' means any person under eighteen years of age not otherwise emancipated by law."

In 2005, the Legislature broadened the statute to include the phrase "or other person in a position of trust," which *W.Va.Code*, § 61–8D–1(12) [2005], defines as:

(12) A "person in a position of trust in relation to a child" refers to any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

█ The defendant contends that his relationship with Angel did not constitute that of a "person in a position of trust" as that phrase is defined in *W.Va.Code*, § 61–8D–1(12) [2005]. The defendant argues that the evidence presented at trial showed that he and Angel had a friendship and that he was never charged with any duty or responsibility for her health, education, welfare or supervision. We disagree.

The jury heard testimony from multiple witnesses that the defendant maintained a consistent presence at the school and the church. The defendant performed maintenance work around the school/church building on multiple occasions. Angel testified that the defendant assisted her with her school work. Patricia Priddy testified that the defendant assisted a student named Michael with his school work. During cross-examination, defense counsel asked Angel who was in charge of monitoring the students and she replied Patricia Priddy, Karin Edmonds, and the defendant. There was also testimony that the defendant played an active role in the church. He led the church in prayer and was twice listed as an "Associate Youth Pastor" in the church bulletin. Angel testified that he told her not to tell anyone about their sexual encounters because he would not be allowed to preach if people knew they were having a sexual relationship.

Circuit Judge Berger read the definition of "person in a position of trust" to the jury and defense counsel had a full opportunity to argue his position to the jury that the defendant was not a "person in a position of trust"

under this definition. We find that this issue was properly decided by the jury. The State presented sufficient evidence supporting the jury's conclusion that the defendant was a "person in a position of trust" to Angel G.

The defendant next argues that Angel was not under his "care, custody or control" at the time the alleged sexual contact in the remodeled house occurred. The terms care, custody and control are not statutorily defined. Absent a statutory definition of these terms, we will necessarily defer to the "common, ordinary, and accepted meanings of the terms in the connection in which they are used." *In re Clifford K.*, 217 W.Va. 625, 640, 619 S.E.2d 138, 153 (2005). The word "care" is defined as "[s]erious attention; heed." Black's Law Dictionary 240 (9th ed.2009). "Custody" is defined as "[t]he care and control of a thing or person for inspection, preservation, or security." *Id.* at 441. "Control" means "[t]o exercise power or influence over." *Id.* at 378.

█ The State presented evidence that Angel and the defendant had sexual contact at the remodeled house on two occasions. On the first occasion, Angel walked to the house after school, the defendant invited her inside, took her into a room with a rocking chair, and according to Angel, "rubbed his private part on my bottom." He then told Angel to sit in the rocking chair and took pictures of her legs. After taking these photographs, Angel testified that the defendant placed the couch cushions on the floor and told her to lie down on her back, at which time he got on top of her and started rubbing his private part on her private part. Angel testified that the defendant then told her to roll over, which she did, and he proceeded to rub "his private part on my bottom." When asked why she complied with this request, Angel stated, "he told me to." When asked why she did not tell anyone about the encounter, Angel said, "because he told me not to."

█ The second encounter at the remodeled house, according to Angel, began with the defendant picking her up in his van and driving her to the house. Upon entering the house, the defendant gave Angel a pair of

pantyhose and told her to put them on, which she did, "because he told me to." After putting the pantyhose on, Angel stated that the defendant "shut the door and he locked it." He then took her to the room with the rocking chair, where the same cushions from the previous encounter were still on the floor. Angel stated that she was on her back and the defendant rubbed his private part on her private part. The defendant then told her to roll over, which she did, and he "started rubbing his private part on my bottom."

This testimony establishes a sufficient basis supporting the jury's finding that the defendant exercised control over Angel during these two encounters. On the first occasion, the defendant told Angel to lie on her back, then told her to lie on her stomach. He also told her to sit in the rocking chair so that he could take pictures of her and instructed her not to tell anyone about their relationship. The State presented sufficient evidence for the jury to conclude that the defendant exercised custody and control over Angel during the second encounter. Angel testified that the defendant picked her up in his van, drove her to the house, and locked the door once they were inside. The defendant told her to put on the pantyhose that he provided and again told her to lie on her back, then told her to lie on her stomach.

Based on this evidence, we conclude that the State presented sufficient evidence for the jury to conclude that the defendant was a person in a position of trust in relation to Angel G. who exercised "care, custody, or control" over her at the time the sexual encounters in the remodeled house occurred.

## IV.

### Conclusion

The circuit court's April 16, 2009, order convicting and sentencing the defendant is affirmed.

Affirmed.