IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**
**June 5, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0910

DAVID BALLARD, Warden
Mount Olive Correctional Complex,
Defendant Below, Petitioner

v.

ROBERT JUNIOR THOMAS,
Petitioner Below, Respondent

Appeal from the Circuit Court of Wyoming County
The Honorable Robert A. Burnside, Jr., Judge
Case No. 11-C-180

REVERSED

Submitted:  May 6, 2014
Filed:  June 5, 2014

Patrick Morrissey, Esq.
Attorney General
Christopher S. Dodrill, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

David Kirkpatrick, Esq.
Kirkpatrick Law Office
Beckley, West Virginia
Attorney for Respondent

The Opinion of the Court was delivered PER CURIAM.
JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

## SYLLABUS BY THE COURT

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."  Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.      "A trial court lacks jurisdiction to enter a valid judgment of conviction against an accused who was denied effective assistance of counsel and a judgment so entered is void." Syl. Pt. 25, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

3.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U. S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

i

4.    "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue."  Syl. Pt. 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

5.    "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

6.    "A term which is widely used and which is readily comprehensible to the average person without further definition or refinement need not have a defining instruction." Syl. Pt. 2, *State v. Bartlett*, 177 W. Va. 663, 355 S.E.2d 913 (1987).

7.    "An instruction for a statutory offense is sufficient if it adopts and follows the language of the statute, or uses substantially equivalent language and plainly informs the jury of the particular offense for which the defendant is charged." Syl. Pt. 8, *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109 (1975).

Per Curiam:

Petitioner David Ballard, Warden of the Mount Olive Correctional Complex, (hereinafter "petitioner") appeals the Circuit Court of Wyoming County's July 23, 2013, order granting respondent Robert Junior Thomas' (hereinafter "respondent") petition for a writ of post-conviction habeas corpus following his conviction of one count of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child pursuant to West Virginia Code § 61-8D-5(a) (2005). The circuit court found that respondent's trial defense counsel was ineffective for failing to offer adequate jury instructions on whether respondent was a "person in a position of trust" as to the victim, L. M.[1] (hereinafter "L. M.") and whether L. M. was under respondent's "care, custody, or control" at the time of the sexual encounter at issue.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in granting respondent's petition for post-conviction habeas corpus. We therefore reverse the order of the circuit court and order respondent remanded back into the custody prescribed by the original sentencing order in this matter to serve out the remainder of his sentence.

---

[1] We follow our past practice in cases which involve sensitive facts pertaining to juveniles and do not utilize the juvenile's name. *See*, *e.g.*, *West Virginia Dept. of Human Services v. La Rea Ann C.L.*, 175 W. Va. 330, 332 S.E.2d 632 (1985).

1

## I. FACTS AND PROCEDURAL HISTORY

At the time of the underlying offense, L. M. was a sixteen-year-old student enrolled in the Wyoming County Board of Education summer school program; respondent was one of her bus drivers and had driven her to school for approximately two weeks. At some point during that two-week period, L. M. came into possession of a note written by respondent which read: "Hey baby girl you are the sweetest most beautiful woman I no I wish I could spend the Rest of my life with you I need you and have you need me To baby girl."[2] L. M. also had two notes containing respondent's cell phone number.[3] On the bus ride home the afternoon of July 24, 2007, L. M. contends that respondent told her he was aware of her failing grades and could help her with her grades if she would meet him later that evening. L. M. testified that respondent told her to watch the security cameras at her home for him to drive by and he would pick her up. L. M. testified that she pretended to go to bed that evening, but snuck out of her bedroom window and got into respondent's car when he arrived.

Respondent drove L. M. to a nearby campground where she claims that respondent locked the car doors, gave her a drink which made her nauseous and sleepy,

---

[2] Respondent admitted writing the note, but contended he had written it to his wife.

[3] Respondent claimed he had given his cell number to students who rode his bus so they could be in contact regarding the bus route.

then proceeded to rape her.[4] Respondent initially denied recalling any sexual contact because he had been drinking that evening, but after confirmatory DNA testing was completed, he acknowledged that he and L. M. had sex, but contended it was consensual. Upon discovering L. M. missing from her bedroom that evening, her parents reported her as a runaway and, as a result, she was detained by the police when she showed up at school the following day. In an initial statement given at school, which she later recanted, L. M. indicated that she left her home at midnight and walked to "Jason's" house where she stayed an hour and fifteen minutes; she then called an individual named Aaron Kent, at whose home she spent the night while his girlfriend was at work.[5]

Respondent was indicted on October 6, 2008, on one felony count of violating West Virginia Code § 61-8D-5(a) entitled, in part, "Sexual abuse by a parent, guardian, custodian or person in a position of trust to a child[.]"[6] The entire crux of

---

[4] For the first time during her trial testimony apparently, L. M. stated that after their sexual encounter, respondent showed her a gun and threatened to kill her sister if she told.

[5] L. M.'s testimony regarding the events of July 24 were highly inconsistent, as was her description of the interactions between her and respondent leading up to that night. The significance of this particular version of events, as discussed more fully *infra*, is that respondent claims that L. M. was a runaway and moving from place to place that night and therefore was in no one's "care, custody, or control." *See* n.7 *infra*.

[6] The indictment, however, makes reference to the pre-2005 title of the statute, "Sexual Abuse by Parent, Guardian or Custodian" and omits any reference to "person in a position of trust." This omission is a curiously recurrent theme throughout the underlying proceedings, as discussed *infra*.

(continued . . .)

respondent's defense was that, at the time of the sexual encounter, L. M. was no longer in the "care, custody, or control" of respondent, which ended, he argued, after she got off of the school bus upon arriving at home. This defense was argued during opening, closing, and the examination of virtually every witness.[7] In fact, the defense called the Director

---

In 2005, the statute was amended to add "person in a position of trust" to the "parent, guardian or custodian" language throughout. The 2005 statute would have been controlling in this matter. West Virginia Code § 61-8D-1(12) was amended as well to include the following definition of a "person in a position of trust":

> A "person in a position of trust in relation to a child" refers to any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or *any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child*.

(emphasis added). The jury was not instructed on this definition.

[7] During closing, defense counsel argued:

> She was doing very adult things. She was sneaking out of windows, she was being a runaway more than once. She was doing what she wanted to, and I would say that no one had any control over this young lady, let alone a bus driver that saw here [sic] twice a day for a few minutes, picked her up and dropped her off. . . . [W]ho's really responsible here? I have children, I have a child in school. I send her to school, she's on teacher's time. She's there, I'm saying you've got her, till she may ride the bus home. She's transferred from teacher to bus driver, bus driver to bring her home, then she's my responsibility, period. I don't care how old she is, my responsibility. . . . Mr. Thomas wasn't under any type of controlling position over her that night. . . . His control over her was minimal. We had testimony from the bus driver and from the transportation board that says that the bus driver's

(continued . . .)

4

of Transportation for the Wyoming County Board of Education to testify regarding the parameters of bus drivers' authority and control over students while on the bus and after they are dropped off at home. At the close of evidence, the State and the defense offered two jury instructions each; both of the defense's instructions were ultimately withdrawn.

On November 4, 2009, the jury found respondent guilty and the trial court sentenced him to ten to twenty years in the penitentiary. His direct appeal was refused by this Court on September 22, 2010.[8] Respondent filed the instant petition for post-conviction habeas corpus relief on December 1, 2011. At the habeas corpus proceedings held on September 28, 2012, respondent called two witnesses: his former defense counsel, Thomas Evans, III (hereinafter "Mr. Evans"), and Mr. Evans' investigator.

---

> duty is basically to get you from Point A to Point B. . . . I think the evidence is obvious that there is some doubt, reasonable doubt that all 13 of you could conclude whether he was in any kind of a custodial, care-giving, controlling role over this young woman. . . . [A] reasonable person is going to conclude that he had no control over her, nor did her parents, nor did the teachers. No one did.

[8] In his direct appeal, respondent argued 1) improper prosecutorial remarks during closing argument; 2) the statutory phrase "other persons in a position of trust in relation to a child under his or her care, custody and control" was unconstitutionally vague; 3) insufficiency of the evidence; and 4) disproportionate sentence.

Respondent alleged multiple claims for habeas corpus relief,[9] but argued primarily that Mr. Evans was ineffective due to his failure to submit proper jury instructions.

On July 23, 2013, the circuit court granted respondent's petition for habeas corpus relief and ordered a new trial. The circuit court found that Mr. Evans was ineffective for failure to proffer "an instruction that would guide the jury" on whether respondent met all of the "special circumstances" contained in West Virginia Code § 61-8D-5(a). The circuit court further found that such failure prejudiced respondent inasmuch as the trial was "fundamentally flawed by the absence of jury instructions on a factual point that was critical not just to the determination of guilt, but to the question of whether a crime had been committed at all." The State thereafter filed the instant appeal.[10]

## II. STANDARD OF REVIEW

This Court has held:

> In reviewing challenges to the findings and conclusions of the
> circuit court in a habeas corpus action, we apply a three-prong

---

[9] Other grounds alleged included 1) use of perjured testimony by the prosecution; 2) inaccuracies in the presentence report; 3) failure to provide defendant copy of indictment; 4) defects in the indictment; 5) refusal to subpoena witnesses; 6) nondisclosure of grand jury minutes and witness notes; 7) sufficiency of the evidence; 8) absence of defendant; 9) more severe sentence than expected; 10) error in amount of credit for time served. The circuit court's order did not address these other issues.

[10] The parties represented during oral argument that the circuit court ordered respondent to be placed on home incarceration pending the outcome of this appeal. *See* W. Va. Code § 62-11B-3 (1994).

standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). With this standard in mind, we proceed to the parties' arguments.

## III. DISCUSSION

It is well-established that "[a] trial court lacks jurisdiction to enter a valid judgment of conviction against an accused who was denied effective assistance of counsel and a judgment so entered is void." Syl. Pt. 25, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). Whether a defendant is entitled to habeas relief for ineffective assistance of counsel is guided by the following test:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U. S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (hereinafter "*Miller/Strickland*").

A.      *Deficiency of Counsel's Performance/Adequacy of Jury Instructions*

With respect to the deficiency of counsel's performance, we have held:

7

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *Miller*. Moreover, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *Thomas*, 157 W. Va. 640, 203 S.E.2d 445.

Respondent was charged with violating West Virginia Code § 61-8D-5(a) which provides, in pertinent part:

> If any *parent, guardian or custodian of or other person in a position of trust* in relation to a *child under his or her care, custody or control,* shall engage in or attempt to engage in sexual exploitation *of*, or in sexual intercourse, sexual intrusion or sexual contact *with*, *a child under his or her care, custody or control*, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such *parent, guardian, custodian or person in a position of trust* shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years.

(emphasis added). As previously noted, both the State and the defense offered two jury instructions. State's Instruction No. 1 tracks the pre-2005 statutory language and the language of the indictment[11] as well as providing definitions for the terms "child,"

---

[11] State's Instruction No. 1, as given, reads:

> The offense charged in Count One of the Indictment in this case is Sexual Abuse By A Parent, Guardian, Custodian of a child. One of two verdicts may be returned by you under this Count of the Indictment. They are: (1) guilty of Sexual Abuse By A Parent, Guardian or Custodian of a child; and (2) not guilty.
>
> Sexual Abuse By a Parent, Guardian, Custodian Of A Child is committed when any parent, guardian or custodian of a child under his or her care, custody or control engages in or attempts to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct.
>
> ***
> The burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt and the Defendant, Robert Junior Thomas is not required to prove himself innocent. He is presumed by the law to be innocent of this charge and this presumption remains with him throughout the entire trial.
>
> Before the Defendant, Robert Junior Thomas can be convicted of Sexual Abuse By A Parent, Guardian, or Custodian Of A Child the State of West Virginia must overcome the presumption that the Defendant, Robert Junior Thomas is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:

(continued . . .)

9

"parent," "custodian," "guardian," "sexual intercourse," "sexual intrusion," "sexual contact," and "sexual exploitation." Nowhere in State's Instruction No. 1 is the term "person in a position of trust" included, which category of offender was added to the controlling 2005 version of West Virginia Code § 61-8D-5(a). State's Instruction No. 2 is merely a reiteration of that portion of the statute which states that one can violate the statute notwithstanding the fact that the child may have willingly participated, consented, or suffered no injury. It is only in this jury instruction that the phrase "person in a

---

The Defendant, Robert Junior Thomas on, before and about the 24th day of July, 2007 in Wyoming County, State of West Virginia committed the offense of "Sexual Abuse By Parent, Guardian or Custodian" by unlawfully and feloniously subjecting [L. M.] to sexual exploitation or sexual intercourse, intrusion or contact when said child was under his care, custody or control. That the Defendant, Robert Junior Thomas was then the parent, guardian, custodian of said child, which child was under his care, custody or control.

If after impartially considering, weighing and comparing all the evidence, both that of the State and that of the Defendant the jury and each member of the jury is convicted beyond a reasonable doubt of the truth of the charge as to each of these elements of Sexual Abuse By A Parent, Guardian, Custodian of a child, you may find Robert Junior Thomas guilty of Sexual Abuse By A Parent, Guardian, Custodian Of A Child as charged in Count One of the Indictment. If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of Sexual Abuse By A Parent, Guardian, Custodian Of A Child, you shall find the Defendant, Robert Junior Thomas not guilty.

10

position of trust" appears. The defense offered two instructions: a "clean slate" instruction which was covered in the court's charge and an instruction on the elements of the statute,[12] which largely mirrored, but was not as comprehensive as, the State's instruction. Both of the defense instructions were withdrawn for these reasons.

The parties disagree as to the basis of the circuit court's grant of habeas relief, that is, which statutory elements required additional jury instructions to be proffered by defense counsel, as determined by the circuit court. This disagreement is undoubtedly based upon the somewhat cryptic and imprecise order entered by the circuit court. Nevertheless, the following constitute the three arguable deficiencies in the jury instructions identified in the circuit court's order: 1) the lack of definition for "person in a position of trust"[13]; 2) the lack of definition for "care, custody, or control"; and 3) the lack of instruction regarding the required "temporal" connection between these elements, *i.e.* that L. M. must have been in respondent's "care, custody or control" at the time of the offense.[14] The State argues that the circuit court based its grant of habeas relief on #3,

_____

[12] This withdrawn instruction likewise fails to include the phrase "person in a position of trust."

[13] In its order, the court noted that "[t]he terms 'position of trust,' 'care,' or 'control' are not defined in the statute." This is obviously incorrect as to "position of trust" inasmuch as it is defined in West Virginia Code § 61-8D-1(12). *See* n.6, *supra*.

[14] This purported requirement of West Virginia Code § 61-8D-5(a) ostensibly arises from *State v. Longerbeam*, 226 W. Va. 535, 540, 703 S.E.2d 307, 312 (2010), wherein the Court found that there was insufficient evidence to convict the appellant because "the record makes clear that [the victim] was not under [the appellant's] care and (continued . . .)

11

only; respondent claims that the circuit court based it on #1 and #2. Given the extraordinary nature of habeas relief, we will address all three.

### 1. Lack of instruction on definition of "person in a position of trust."

Respondent contends that the circuit court properly found that the lack of jury instruction on the definition of "person in a position of trust" constituted deficient performance by counsel. At the outset, we note that we are puzzled by the circuit court and parties' failure to acknowledge that the phrase "person in a position of trust" was omitted entirely from the indictment and State's Instruction No. 1—all in spite of their collective preoccupation with the fact that the jury was not provided with a definition for this term. The term was used liberally throughout the trial and both the circuit court order and parties' briefs refer to it on countless occasions. In fact, only respondent

---

custody at the time of the incident[.]" First, *Longerbeam* is a per curiam opinion and contains no controlling point of law reflective of this "temporal" requirement, as characterized by the parties. As such, this opinion assumes, *arguendo*, such a requirement exists solely for purposes of addressing petitioner's assignments of error. Whether a majority of this Court would determine that the statutory language is not so restrictive as to require a defendant to be acting in his or her statutorily-defined role at the time of the incident is questionable. In fact, other cases in which this Court has addressed the subject statute suggest that the "care, custody or control" element may well simply *derive* from the statutorily-defined relationship which allows a defendant to commit the offense. *See State v. Collins*, 221 W. Va. 229, 234 n.11, 654 S.E.2d 115, 120 n.11 (2007) (finding that "*as a custodian*, the Appellant possessed sufficient control over [the victim] . . . for a jury to properly convict[.]" (emphasis added)); *State v. Edmonds*, 226 W. Va. 464, 469, 702 S.E.2d 408, 413 (2010) (finding that "control" is defined as "'exercise[ing] power or influence over[]'" and that as "person in a position of trust" defendant was able to exercise sufficient control over victim to uphold conviction). As these cases make clear, one who qualifies under the statute may exert "control" not constrained by temporal circumstances.

12

acknowledges in a footnote that the circuit court apparently "missed" the operative 2005 amendment to West Virginia Code § 61-8D-1(12) which provided a definition for "person in a position of trust." During the habeas proceeding, Mr. Evans testified that he could not recall why he did not offer an instruction on the definition of "person in a position of trust."

Clearly, however, both the absence of this phrase from the statutory instruction and commensurate absence of definition actually inured to respondent's benefit. It is clear that the jury found respondent guilty under the much narrower category of "custodian" upon which it was properly instructed. "Custodian" is defined as

> a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

W. Va. Code § 61-8D-1(4). To whatever extent Mr. Evans noted that "person in a position of trust" and its definition were missing from the State's instructions, objecting to such would not have been in respondent's best interests inasmuch as the omitted category is much broader than "custodian." Moreover, there is no question that respondent would fall easily into the "person in a position of trust" category given that "by virtue of [his] occupation or position [he was] charged with [] responsibility for the

13

health, education, welfare, or supervision of the child." W. Va. Code § 61-8D-1(12).

Therefore, we do not find that Mr. Evans' failure to offer an instruction on the definition

of "person in a position of trust" constituted deficient performance.

### 2. Lack of instruction on definition of "care, custody, or control"

Respondent further contends that the circuit court found the absence of

definitional instruction of the phrase "care, custody, or control" constituted further

deficiency on the part of Mr. Evans. Unlike "person in a position of trust," the circuit

court correctly noted that there is no statutory definition of "care, custody, or control,"

nor did the defense proffer a proposed instruction attempting to define it. However, this

Court has made clear that "[a] term which is widely used and which is readily

comprehensible to the average person without further definition or refinement need not

have a defining instruction." Syl. Pt. 2, *State v. Bartlett*, 177 W. Va. 663, 355 S.E.2d 913

(1987). The *Bartlett* Court elaborated:

> We have never held that every term in a jury instruction must be defined, nor does the petitioner direct us to any authority requiring that the term in question be defined. "Reckless disregard" is not so arcane a term that the lack of a definitional instruction left the jury entirely without guidance. The jurors were informed that "reckless disregard" was a material element of the offense and that a finding of "reckless disregard" was a prerequisite to conviction under *W. Va. Code*, 17C-5-2(a) [1983]. The twelve jurors obviously reached a common understanding of what constitutes "reckless disregard", and agreed that the defendant's conduct fell within the ambit of that term.

14

*Id*. at 667, 355 S.E.2d at 917. *See State v. Jett,* 220 W. Va. 289, 293, 647 S.E.2d 725, 729 (2007) ("'Specific words used in instructions which are self-explanatory and readily understood need not be specifically defined.'" (quoting *State v. Schmiedt,* 525 N.W.2d 253, 255 (S.D. 1994)); *see also State v. Hunter,* 2012 WL 2914284, *3 (W. Va. 2012) ("As to 'cause,' petitioner argues for an instruction that is not formulated . . . in West Virginia.").

We have previously noted the absence of statutory definitions for several of the operative terms in this particular statute. *See Collins*, 221 W. Va. at 233, 654 S.E.2d at 119 (2007) (noting that "temporary" and "custody" as contained in W. Va. Code § 61-8D-1(4) were undefined); *Edmonds*, 226 W. Va. at 469, 702 S.E.2d at 413 (2010) (observing that "'care, custody and control' are not statutorily defined."). In *Collins*, we affirmed a defendant's conviction as a "custodian" under this statute where he sexually assaulted a child he had taken on a four-wheeler ride. We observed that the jury was provided with a recitation of the operative elements of the statute, along with the definition of "custodian," and found that the jury could properly have concluded that defendant "accepted temporary physical possession and custody" of the child when he agreed to take her on the four-wheeler ride. *Id*. at 233-34, 654 S.E.2d at 119-20. We further noted that the defendant possessed sufficient "control" over the child by refusing to take the child home until she performed oral sex on him. *Id*. at 234, n.11, 654 S.E.2d at 120 n.11.

The absence of definition for the phrase "care, custody, or control" undoubtedly exists such as to permit the jury to use its collective experience and general knowledge on these very common terms to make a finding on this element. As in *Bartlett*, we find that there is nothing "so arcane" about the term "care, custody or control," that the jury was left without guidance as to this element of the statute. 177 W. Va. at 667, 335 S.E.2d at 917. Further, in *Edmonds*, we stated—deferring to its "'common, ordinary, and accepted meaning[]'"—that "'[c]ontrol' means '[t]o exercise power or influence over.'" 226 W. Va. at 469, 702 S.E.2d at 413. Certainly, had defense counsel proffered an instruction commensurate with this commonly-accepted definition, such an instruction, rather than aiding respondent's cause, may have served only to highlight respondent's alleged actions of locking the door, providing L. M. with a drink which made her nauseous and sleepy, and threatening her and her sister with a gun. Therefore, we find that the failure to offer a proposed definitional instruction on this term was not a deficiency in Mr. Evans' performance.

> *3. Lack of instruction on temporal relationship between offense and child being in respondent's "care, custody, or control"*

Finally, petitioner urges that the circuit court's rationale for granting habeas relief was neither of the alleged instructional deficiencies above, but rather, because there was inadequate instruction on the "temporal relationship" purportedly required by the statute. More specifically, the State contends that the circuit court found that the jury was inadequately instructed on the perceived requirement that L. M. must have been in

16

respondent's "care, custody or control" *at the time the offense was committed*. Nevertheless, the State contends that the jury was adequately instructed since the operative elements of the statute were read to the jury, essentially verbatim, in State's Instruction No. 1. In that regard, we have held that "[a]n instruction for a statutory offense is sufficient if it adopts and follows the language of the statute, or uses substantially equivalent language and plainly informs the jury of the particular offense for which the defendant is charged." Syl. Pt. 8, *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109 (1975); *see also State v. Slater,* 222 W.Va. 499, 665 S.E.2d 674 (2008) (finding instruction on wanton endangerment sufficient where it was identical to statutory language).

West Virginia Code § 61-8D-5 provides that the offense is committed when "any parent, guardian or custodian of a child under his or her care, custody or control" commits an enumerated sexual act "with a child under his or her care, custody or control." The jury was so instructed. Similarly, and perhaps more specifically, the language of the indictment which was also included in State's Instruction No. 1 required the State to prove that respondent "unlawfully and feloniously subject[ed] [L. M.] to sexual exploitation or sexual intercourse, intrusion or contact *when said child was under his care, custody or control* [and] that [respondent] was then the parent, guardian, custodian of said child, which child was under his care, custody or control." (emphasis added). As noted hereinabove, *see* n.14 *supra*, whether such a "temporal" element exists has not been determined by this Court. Regardless, however, since the jury was in fact

17

instructed that L. M. being in respondent's care, custody, and control at the time of the sexual act was an element of the offense, it was required to make this factual determination to convict and did so as evidenced by its verdict. *See State ex rel. Boso v. Hedrick,* 182 W.Va. 701, 708, 391 S.E.2d 614, 621 (1990) ("Therefore, we find that the defense counsel's failure to request an alibi instruction did not constitute ineffective assistance of counsel since the defense of alibi under the circumstances of this case involved a question of fact for the jury to resolve in its determination of whether the State had proved Mr. Boso's guilt beyond a reasonable doubt."). Accordingly, we find that the failure to offer further instruction(s) on the temporal element purportedly contained in West Virginia Code § 61-8D-5(a) did not constitute deficient performance by counsel.

## B. *Reasonable probability of different outcome*

Even assuming, *arguendo*, that counsel's failure to create additional jury instructions from whole cloth to elucidate the operative terms of the statute constituted ineffective assistance, we find that the circuit court clearly erred in concluding that the second element of the *Miller/Strickland* test was met. With regard to the required showing that counsel's purported ineffectiveness create a "reasonable probability of a different outcome," the United States Supreme Court has observed:

> Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and act or omission that is unprofessional in one case may be sound or even

18

> brilliant in another. Even if a defendant shows particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

*Strickland v. Washington*, 466 U. S. 668, 693 (1984).

The circuit court concluded that the absence of additional jury instruction(s) on respondent's lone legal defense created a "fundamentally flawed" trial which prejudiced respondent. However, neither the circuit court nor respondent provides support for the notion that but for the absence of additional instructions there was a reasonable probability that the verdict would have been different. For this conclusion to be reached, one would logically have to know what the purported instruction(s) would have been and whether it may have swayed the outcome. Even the circuit court observed that

> [s]uch an instruction might have been difficult for counsel to draft and for the trial court to analyze and rule upon. But if the necessary instruction had been drafted and offered, the trial court would have had the duty to rule upon it, and if conviction resulted the Supreme Court of Appeals would have had the opportunity to determine on direct appeal whether the instruction was correct.

The circuit court's concession that the purported instruction would still be subject to review by this Court belies its conclusion that there was a "reasonable probability" that if

such an instruction had been offered or given, the outcome would have necessarily been different, as required by *Miller/Strickland*.[15]

Even before this Court, respondent offers no proposed instruction that would have aided his cause. It is difficult to conceive how the absence of a yet-to-be-articulated instruction would have resulted in the reasonable probability of respondent's acquittal. As stated previously herein, respondent's only challenge to the substantive evidence at trial was that since he was not on duty as L. M.'s bus driver at the time of the sexual encounter, she was not under his "care, custody or control"; therefore, he committed no criminal offense. It was undisputed that the encounter occurred and that it occurred well after respondent dropped off L. M. that day; obviously, the jury found that the encounter derived of their relationship as student/bus driver and that she was under his care, custody, and control at the time of the encounter. Respondent fully factually developed and argued the only viable defense available to him under the circumstances, which the jury clearly found unavailing as evidenced by its verdict. As such, the circuit court erred in finding that the second prong of *Miller/Strickland* was met. *See State ex rel. Wimmer v. Trent*, 199 W.Va. 644, 649, 487 S.E.2d 302, 307 (1997). ("Under the

---

[15] Any suggestion that somehow this Court's precedent would compel a different outcome based on the facts of this case is misplaced. *See Edmonds*, 226 W. Va. 464, 702 S.E.2d 408 (upholding conviction where maintenance worker/occasional volunteer at a Christian school picked child up in his van and took her to a house he was remodeling where he sexually assaulted her); *State ex rel. Harris v. Hatcher*, No. 13-1236 (May 29, 2014) (holding that whether bus driver who sexually assaulted student at both her house and his merely creates jury issue on operative elements of West Virginia Code § 61-8D-5(a)).

circumstances the court believes that even if the instruction had been given, it is not reasonably probable that the jury would have found differently given the overall evidence in the case."); *State v. Foster*, 221 W.Va. 629, 656 S.E.2d 74 (2007) (finding failure to offer jury instructions did not prejudice defendant and that jury was otherwise properly instructed); *State ex rel. Adkins v. Dingus*, 232 W.Va. 677, __, 753 S.E.2d 634, 641 (2013) (finding that "although the facts of the instant case may have been sufficient to warrant [an] instruction" election not to do so was not unreasonable); *Ronnie R. v. Trent*, 194 W.Va. 364, 369, 460 S.E.2d 499, 504 (1995) ("We conclude that while the 'care and caution' instruction may have been applicable in the present case, its use was not mandatory, and trial counsel's failure to propose it was harmless error."); *Miller,* 194 W. Va. 3, 16-17, 459 S.E.2d 114, 127-28 ("[C]ounsel [is not] required to offer a defense or instruction on every conceivable defense. . . . We hold that the mere fact that trial counsel failed to offer a viable defense instruction is not alone a sufficient ground to prove ineffectiveness of counsel."); *Boso*, 182 W. Va. 701, 391 S.E.2d 614 (finding counsel's failure to request alibi instruction did not constitute ineffective assistance of counsel). We therefore conclude that the circuit court erred in granting respondent's petition for habeas corpus relief inasmuch as respondent failed to establish that his counsel was ineffective and that but for his counsel's purported ineffectiveness, there was a reasonable probability of a different outcome.

21

## IV. CONCLUSION

For the reasons set forth hereinabove, we reverse the July 23, 2013, order of the Circuit Court of Wyoming County, West Virginia. We further order that respondent be remanded into the custody prescribed in the sentencing order originally entered in the criminal proceeding of this matter to serve out the remainder of his sentence. The Clerk of this Court shall issue our mandate forthwith.

Reversed.

22