No. 21-0901 — *War Memorial Hospital, Inc. v. The West Virginia Health Care Authority*

**FILED**

**April 12, 2023**

*released at 3:00 p.m.*
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BUNN, JUSTICE, dissenting, joined by Chief Justice Walker:

The majority decision in this case allows petitioner War Memorial Hospital, Inc., to place a magnetic resonance imaging ("MRI") scanner at an outpatient facility owned by its parent company and located twenty miles from the hospital in another county without obtaining a Certificate of Need ("CON"). The majority ignores the defined term "hospital" in the CON article of the West Virginia Code. This erroneous interpretation allows a hospital to acquire and utilize an MRI scanner costing up to $750,000 without seeking a CON and to place it anywhere in West Virginia, even next door to its competitor. *See* W. Va. Code §§ 16-2D-2(21) and 16-2D-11(c)(27) (eff. 2017).[1]

The Legislature created a process requiring approval and receipt of a CON before certain health services are acquired, offered, or developed. *See* W. Va. Code § 16-2D-8 (eff. 2016). The Legislature declared that "the offering or development of all health services" must be accomplished, among other things, in a way that "avoid[s] unnecessary duplication of health services," and "contain[s] or reduce[s] increases in the

---

[1] Like the majority, I also refer to the 2017 version of the exemption. However, I later discuss the 2023 amendments to the CON article that reinforce my objections to the majority's conclusion.

1

cost of delivering health services." W. Va. Code § 16-2D-1(1) (eff. 2016) (noting the legislative findings of the CON article). *See also Amedisys W. Va., LLC v. Pers. Touch Home Care of W. Va., Inc.*, 245 W. Va. 398, 408, 859 S.E.2d 341, 351 (2021) (explaining purpose of CON legislation). Still, the Legislature determined that some services are exempt from the formal CON process. *See* W. Va. Code §§ 16-2D-10, -11 (eff. 2017).

The West Virginia Health Care Authority ("WVHCA") denied the petitioner's request for a CON exemption, pursuant West Virginia Code § 16-2D-11(c)(27) (eff. 2017), to place an MRI scanner in an outpatient facility without a CON, explaining that the WVCHA already granted a CON to the hospital's parent company to develop a medical office building at the proposed location. The WVHCA reasoned that "the acquisition and utilization of a . . . MRI scanner by a hospital which the hospital does not intend to use at its primary location is not exempt from [CON] review." The Office of Judges affirmed the WVHCA, and circuit court ultimately affirmed the Office of Judges, explaining that the petitioner's proposed interpretation of the exemption "would allow a hospital to acquire and utilize MRI scanners in any location without regard to whether there is a need for the service or considering the impact such additional services would have on existing MRI services located at other hospitals already established in an area." The circuit court concluded that "it is clear that the Legislative intent of the exemption was that the MRI device would be acquired and used by the hospital in the acquiring hospital's facility." I would have affirmed the circuit court's decision on other grounds. Specifically, based on

2

the definition of the term "hospital" and the plain language of the statutory scheme at issue. Because the majority's conclusion erroneously dismisses this plain language, I respectfully dissent.

The basis for the majority's decision is simply that "[c]learly" the petitioner met every statutory requirement because (1) petitioner was a hospital that met the definition of the term hospital, and (2) it sought "the acquisition and utilization" of an MRI scanner within the relevant price range. The majority further maintains that because the Legislature put in geographic-specific language in some CON exemptions, but not the one at issue here, then no limit exists on *where* a hospital may place a MRI scanner within the relevant price range so long as the hospital is the entity utilizing and acquiring it. This interpretation improperly expands the Legislature's precise definition of the term hospital for the purpose of the CON statutory scheme in article 2D of chapter 16 and ignores a basic rule of statutory analysis: apply statutory definitions.

West Virginia Code § 16-2d-11(c)(27) contains a CON exemption for "[t]he acquisition and utilization of one computed tomography scanner and/or one magnetic resonance imaging scanner with a purchase price of up to $750,000 by a *hospital*." W. Va. Code § 16-2D-11(c)(27) (eff. 2017) (emphasis added). The Legislature defined the term

3

"hospital" for the entire CON article. *See* W. Va. Code § 16-2D-2 (eff. 2017) (beginning

with the phrase "[a]s used in this article:" then defining terms). The statute states:

> (21) "Hospital" means a facility licensed pursuant to the provisions of article five-b of this chapter and any acute care facility operated by the state government, that primarily provides inpatient diagnostic, treatment or rehabilitative services to injured, disabled or sick persons under the supervision of physicians.

W. Va. Code § 16-2D-2(21) (eff. 2017). Article 5B, chapter 16 cross-referenced in that

definition includes a definition of hospital, in relevant part, as follows:

> A hospital or extended care facility operated in connection with a hospital, within the meaning of this article, shall mean any institution, place, building or agency in which an accommodation of five or more beds is maintained, furnished or offered for the hospitalization of the sick or injured.

W. Va. Code § 16-5B-1 (eff. 1977). [2]

When the Legislature defines terms in a statutory scheme, we apply those

definitions wherever the Legislature uses those terms. "Where the legislature . . . declare[s]

what a particular term 'means,' such definition is ordinarily binding upon the courts and

excludes any meaning that is not stated." *In re Greg H.*, 208 W. Va. 756, 760, 542 S.E.2d

___

[2] West Virginia Code § 16-5D-1 also provides for the licensure of ambulatory health care facilities and ambulatory surgical facilities, and includes definitions for these terms. However, these facilities are defined in the CON article separately.

919, 923 (2000) (per curiam) (footnote omitted).[3] *See Tanzin v. Tanvir*, ___ U.S. ___, ___, 141 S. Ct. 486, 490, 208 L. Ed. 2d 295, ___ (2020) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." (internal quotations omitted)); *State v. Iowa Dist. Ct. for Scott Cnty.*, 889 N.W.2d 467, 471-72 (Iowa 2017) ("[W]hen a statute defines a term, the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature." (internal quotations omitted)). By defining the meaning of a word, the Legislature exercises legislative power "with the explicit goal to provide a correct understanding of its intention, and thus to facilitate the primary judicial inquiry of statutory interpretation." Norman Singer & Shambie Singer, *2A Sutherland Statutory Construction* § 47:7 (7th ed. 2022). Only undefined words receive "'their common, ordinary and accepted meaning in the connection in which they are used.'" *Nicole L. v. Steven W.*, 241 W. Va. 466, 471, 825 S.E.2d 794, 799 (2019) (quoting Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982)).

The Legislature, through its definition, placed a limit on the term hospital, restricting its meaning to "a *facility* licensed pursuant to the provisions of [§§ 16-5D-1 et

---

[3] The majority asserts that neither the parties nor the lower decisional bodies rely on the definition of hospital in their briefing or decisions. Still, we should not ignore the Legislature's instructions as to the meaning of defined terms merely because the parties or the lower court fail to explicitly use or analyze the words of the statute.

seq.] . . . that primarily provides inpatient diagnostic, treatment or rehabilitative services to injured, disabled or sick persons under the supervision of physicians." W. Va. Code § 16-2D-2(21) (eff. 2017) (emphasis added). This definition is further refined and restricted by the cross-reference to West Virginia Code §§ 16-5D-1 et seq., as the Legislature again limits the definition of a hospital in § 16-5D-1 to a *location* where beds are maintained—defining a hospital as "any institution, place, building or agency in which an accommodation of five or more beds is maintained, furnished or offered for the hospitalization of the sick or injured." Practically, statutory definitions prevent statutes from being too long. Still, if we replace the word "hospital" in the exemption with the Legislature's definition of "hospital," the resulting sentence shows that the exemption applies *only* to a facility: "[t]he acquisition and utilization of one computed tomography scanner and/or one magnetic resonance imaging scanner with a purchase price of up to $750,000 by a" "facility licensed pursuant to the provisions [§§ 16-5D-1 et seq.] . . . that primarily provides inpatient diagnostic, treatment or rehabilitative services to injured, disabled or sick persons under the supervision of physicians." I disagree with the majority's conclusion because the petitioner ceased to be a hospital for the purpose of the CON exemption when petitioner planned to locate the MRI outside of its *facility* in Berkeley Springs.

I agree with the majority that the WVHCA's use of the phrase "primary location" is not found within the CON statutory scheme or definitions in article 2D of chapter 16. Still, while the WVHCA's language may have been inartful, it came to the correct result, as did the circuit court. The location limitation already exists through the definition. The Legislature did not define "hospital" as the licensed entity, which may have extended the CON exemptions to all actions undertaken by the hospital itself, but rather chose to define it as a physical location. The Legislature constrained the term "hospital" to a specific definition—a definition that certainly does not extend to a medical office building twenty miles down the road, owned by a parent company with its own certificate of need for that location, where the petitioner claimed it would acquire and offer outpatient MRI services.[4] *See* W. Va. Code § 16-2D-2(21) (eff. 2017).

No one disputes that the petitioner, at its *current facility*, is a hospital in accordance with the statutory definition for the purposes of the CON article. And because

---

[4] While the majority declares that petitioner represented, and the circuit court found, that the location would be staffed by its employees, the record contains no evidence that the petitioner mentioned staffing in the exemption application to the WVHCA. At the hearing before the Office of Judges, after the petitioner appealed the WVHCA's decision, counsel proffered that information to the reviewing body and included that information in its submissions to the circuit court. The circuit court merely stated that the petitioner *asserts* that the location "would have been staffed by [petitioner's] employees." Furthermore, to the extent that the majority relies, in part, on the fact that the outpatient facility purportedly will be staffed with hospital employees, the definition of "hospital" is not based upon the source of its staff.

the petitioner is a hospital in a general, commonly used sense of the term, the majority appears to ascribe that general term to the exemption. Certainly colloquially, society discusses hospitals in general terms, as opposed to entities limited by statutory definitions that depend on context. Still, when the Legislature decides to define a term, we must cast aside its common usage and instead use the Legislature's circumscribed definition. Only *undefined* words retain their common and ordinary meanings. *See State v. Edmonds*, 226 W. Va. 464, 469, 702 S.E.2d 408, 413 (2010) (per curiam) ("Absent a statutory definition of these terms, we will necessarily defer to the 'common, ordinary, and accepted meanings of the terms in the connection in which they are used.'" (quoting *In re Clifford K.*, 217 W. Va. 625, 640, 619 S.E.2d 138, 153 (2005)).

The purpose of the CON article is inherently one of limitation and efficient health care delivery, including "to avoid unnecessary duplication of health services, and to contain or reduce increases in the cost of delivering health services." *See* W. Va. Code § 16-2D-1(1) (eff. 2016) (regarding legislative findings). This Court's "starting point" in an analysis of legislative intent is the "language of the statute." *W. Va. Hum. Rts. Comm'n v. Garretson*, 196 W. Va. 118, 123, 468 S.E.2d 733, 738 (1996) ("Our starting point, of course, is the language of the statute."). By ignoring the plain language of the definition of hospital, the majority creates a result where "no location-specific requirement [is] applicable to the exemption therein," so a hospital can place an MRI scanner anywhere

without a CON, so long as the MRI is within the purchase price and the hospital somehow plans to "acquire and utilize" it. Nothing prevents a hospital from placing an MRI costing $750,000 or less *anywhere* in West Virginia—including a few counties over, next door to a competitor hospital, in an effort to cut its competitor's profit margins and patient base. I agree with the Court's prior holdings that

> "'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 2, *Conseco Fin. Serv'g Corp. v. Myers*, 211 W. Va. 631, 567 S.E.2d 641 (2002).

Syl. pt. 8, *Vanderpool v. Hunt*, 241 W. Va. 254, 823 S.E.2d 526 (2019). I am concerned that the majority's construction of the statute "result[s] in an absurdity" when another "reasonable construction" should be made. *See* Syl. pt. 9, *id.* (quoting Syl. pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938)). The majority's result is at odds with both the plain language and the purpose of the statute and allows the petitioner to manipulate the exemption and circumvent the intent of the Legislature.[5]

---

[5] My view of the statutory scheme is further supported by recent amendments to the definition of the term "campus." This legislation further limits the defined term campus to regard *only* hospitals, and constrains a hospital's campus to areas "within 250 yards of the main buildings." W. Va. Code § 16-2D-2(9) (eff. 2023) ("'Campus' means the physical area immediately adjacent to the hospital's main buildings, other areas, and structures that are not strictly contiguous to the main buildings, but are located within 250

The plain language of the CON article provides that the exemption at issue should apply only to a hospital at the hospital facility, not twenty miles away at a related entity's outpatient center. I respectfully dissent.

---

yards of the main buildings."). Furthermore, nothing in either the prior or current definition of the term "campus" means that the defined term "hospital" *lacks* a geographic limitation. The plain language of the definition of hospital limits it to a particular facility.

Other 2023 amendments to the CON article illustrate the legislative intent that "hospital" be a facility. The newly defined term "hospital services" means "services provided primarily to an inpatient," and lists some included services provided "in various departments on a hospital's campus." W. Va. Code § 16-2D-2(22) (eff. 2023). The new legislation also exempts from the CON requirement "[h]ospital services performed at a hospital." W. Va. Code § 16-2D-10(9) (eff. 2023).

10